# IN THE SUPREME COURT OF TEXAS

No. 17-0198

WASSON INTERESTS, LTD., PETITIONER,

v.

CITY OF JACKSONVILLE, TEXAS, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS

**Argued February 27, 2018**

JUSTICE BOYD delivered the opinion of the Court:

Having granted Petitioner's motion for rehearing, we withdraw the judgment and opinion we issued on June 1, 2018.

This case comes to us for the second time. As we explained the first time, "we have long held that '[a] municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions.'" *Wasson Interests, Ltd. v. City of Jacksonville* (*Wasson I*), 489 S.W.3d 427, 430 (Tex. 2016) (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006)).[1] As a matter of first impression, we held that this governmental/proprietary dichotomy "applies in the contract-claims context just as it does in the tort-claims context." *Id.* at 439. The issue now is

---

[1] This case concerns immunity from suit, not liability. *See Wasson I*, 489 S.W.3d at 430 n.4. ("When the government contracts with private citizens, it waives immunity from liability, but not its immunity from suit.").

whether the contract claim arises from the municipality's performance of a governmental or proprietary function. We hold that it arises from the municipality's performance of a proprietary function, so governmental immunity does not apply. We reverse the court of appeals' judgment and remand the case to the court of appeals.

**I.**
**Background**

The City of Jacksonville constructed Lake Jacksonville in the late 1950s to serve as the City's primary source of water. Over the next several decades, the City developed the surrounding area and began leasing lakefront lots to private parties. In 1996, James and Stacy Wasson entered into long-term leases of City-owned lakefront lots and constructed a seven-bedroom house. The lease agreements incorporated the City's Rules & Regulations Governing Lake Jacksonville by reference. Those rules provide that all lots outside the City's corporate limits—which include the Wassons' lots—"shall be restricted to residential purposes only," and that no lot may be used to operate a "business or commercial enterprise." The rules also provide that breach of "any of the regulations . . . shall be grounds for cancellation of the lessee's lease."

The Wassons initially lived on the property but later moved and assigned the leases to Wasson Interests, Ltd. Planning to use the property as a bed-and-breakfast and event center, Wasson sought several variances from the Lake Jacksonville Advisory Board and the City Council, although it believed the variances were unnecessary. The Board denied the requests. Undeterred, Wasson began advertising and renting the property for short lease terms, weddings, and other events. The City determined these activities violated the leases' requirement that the property be used only for residential purposes and threatened to terminate the leases unless Wasson ceased the business-related rentals.

2

In June 2010, the City terminated Wasson's leases and issued an eviction notice. A few months later, the parties negotiated an agreement that reinstated the leases and permitted Wasson to rent the property to single families and small groups, but only for periods of a month or longer and only for private residential purposes. In early 2011, the City again terminated the leases, alleging that Wasson had been using a "sham monthly residential agreement" to "circumvent" the reinstatement agreement and use the property for "commercial" activities. Wasson filed this suit in response, alleging the City breached the lease agreements and seeking declaratory and injunctive relief. The City moved for summary-judgment on the grounds that (1) governmental immunity bars Wasson's breach-of-contract claim, (2) immunity is not waived, (3) the City and Wasson did not enter into a valid, enforceable contract, (4) Wasson did not perform under the contract and its non-performance was not excused, and (5) the City did not breach the contract. The trial court granted the City's motion without comment, and Wasson appealed.

The court of appeals affirmed based on governmental immunity, rejecting Wasson's argument that the governmental/proprietary dichotomy applies to breach-of-contract claims.[2] We reversed, holding that the dichotomy applies "whether a city commits a tort or breaches a contract." *Wasson I*, 489 S.W.3d at 439. Because the court of appeals had not addressed "whether the contract at issue was proprietary or governmental," we remanded for a determination of that issue. *Id.* On remand, the court of appeals held that Wasson's contract claim arose from the City's performance of a governmental function, and thus governmental immunity applied to bar the claim. 513 S.W.3d at 222–23. We again granted Wasson's petition for review.

---

[2] *Wasson Interests, Ltd. v. City of Jacksonville*, — S.W.3d —, No. 12–13–00262–CV, 2014 WL 3368413, at *3–4 (Tex. App.—Tyler July 9, 2014) (mem. op.), *rev'd*, 489 S.W.3d 427.

## II.
## The Dichotomy

"Municipal corporations exercise their broad powers through two different roles; proprietary and governmental." *Gates v. City of Dallas*, 704 S.W. 2d 737, 738 (Tex. 1986). The governmental/proprietary dichotomy recognizes that immunity protects a governmental unit from suits based on its performance of a governmental function but not a proprietary function. *Wasson I*, 489 S.W.3d at 430. "Unlike governmental functions, for which municipal corporations have traditionally been afforded some degree of governmental immunity, proprietary functions have subjected municipal corporations to the same duties and liabilities as those incurred by private persons and corporations." *Gates*, 704 S.W.2d at 739.

The governmental/proprietary dichotomy is based on the reality that sovereign immunity is inherent in the State's sovereignty, and municipalities share that protection when they act "as a branch" of the State but not when they act "in a proprietary, non-governmental capacity." *Wasson I*, 489 S.W.3d at 430. Whether a municipality enjoys immunity from suit thus depends on "the relationship, or lack thereof, between the municipality and the state, not the relationship between the municipality and the party bringing suit." *City of Georgetown v. Lower Colo. River Auth.*, 413 S.W.3d 803, 811 (Tex. App.—Austin 2013, pet. dism'd).

The distinction between a municipality's governmental and proprietary functions "seems plain enough, but the rub comes when it is sought to apply the test to a given state of facts." *City of Houston v. Wolverton*, 277 S.W.2d 101, 103 (Tex. 1955). As we noted in *Wasson I*, "determining which functions are proprietary and which are governmental is not always a cut-and-dried task." 489 S.W.3d at 438. "It is in the application of this rule to a particular fact situation that the difficulty arises." *City of Houston v. Shilling*, 240 S.W.2d 1010, 1012 (Tex. 1951).

4

We have explained that, "generally," governmental functions consist of a municipality's activities "in the performance of purely governmental matters solely for the public benefit." *Tooke*, 197 S.W.3d at 343 (quoting *Dilley v. City of Houston*, 222 S.W.2d 992, 993 (Tex. 1949)). Historically, governmental functions have consisted of activities "normally performed by governmental units" such as "police and fire protection." Joe R. Greenhill and Thomas V. Murto III, *Governmental Immunity*, 49 TEX. L. REV. 462, 463 (1971) [hereinafter Greenhill]. "Acts done as a branch of the state—such as when a city 'exercise[s] powers conferred on [it] for purposes essentially public . . . pertaining to the administration of general laws made to enforce the general policy of the state'—are protected by immunity." *Wasson I*, 489 S.W.3d at 433 (quoting *City of Galveston v. Posnainsky*, 62 Tex. 118, 127 (1884)).

Proprietary functions, by contrast, are those "performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality," and "not as an arm of the government." *Gates*, 704 S.W.2d at 739; *Dilley*, 222 S.W.2d at 993. These are usually activities "that can be, and often are, provided by private persons." Greenhill at 463. "Acts that are proprietary in nature, therefore, are not done as a branch of the state," and thus "do not implicate the state's immunity for the simple reason that they are not performed under the authority, or for the benefit, of the sovereign." *Wasson I*, 489 S.W.3d 427.

Although we have recognized the governmental/proprietary dichotomy as a matter of common law, the Texas Constitution authorizes the Legislature to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." TEX. CONST. art. XI, § 13. Exercising that authority, the Legislature has defined and enumerated

governmental and proprietary functions for the purposes of determining whether immunity applies to tort claims against a municipality. *See* TEX. CIV. PRAC. & REM. CODE § 101.0215.

The Tort Claims Act generally defines governmental functions as those "that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." *Id.* § 101.0215(a). The Act enumerates thirty-six governmental functions, ranging from "police and fire protection and control" to "animal control." *See id.* § 101.0215(a)(1), (33). Conversely, the Act defines proprietary functions as those "that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." *Id.* § 101.0215(b). The Act provides a non-exclusive list of propriety functions, such as "the operation and maintenance of a public utility;" "amusements owned and operated by the municipality"; and "any activity that is abnormally dangerous or ultrahazardous." *Id.* Proprietary functions, however, do not include any of the Act's enumerated governmental functions. *Id.* § 101.0215(c).

Although these statutory definitions and designations apply expressly to tort claims, we explained in *Wasson I* that they can also "aid our inquiry" when applying the dichotomy in the contract-claims context. *Wasson I*, 489 S.W.3d at 439. We thus consider both the statutory provisions and the common law in determining whether a city's contractual conduct is governmental or proprietary.

### III.
### The City's Relevant Activity

The parties dispute which of the City's various activities are relevant to the governmental/proprietary inquiry. The City asserts that immunity applies because all of its activities constituted governmental functions, including its creation of Lake Jacksonville as a water

6

supply, its decision to lease the property surrounding the lake, its adoption of ordinances and rules governing use of the leased property, and its attempt to enforce those rules against Wasson. And if one or more of these activities is not relevant, the City argues, its attempt to enforce the rules against Wasson is independently controlling because Wasson bases its breach-of-contract claim on that conduct.

The court of appeals agreed with the City and considered all of the "specific acts" underlying Wasson's claims." 513 S.W.3d at 221–22. In particular, the court focused on "the City's act of enforcing its ordinance to prevent commercial activity and terminate [Wasson's] lease" because that "act form[s] the basis of" Wasson's claim. *Id.* at 222. Concluding that the City performed that act as a "government function to maintain a safe and healthy water supply for its citizens and to preserve the property values of the lease lots," the court held that governmental immunity applies. *Id.* at 222–23.

Wasson, however, argues the only relevant activity is the City's decision to lease the property. Instead of focusing on the City's reasons for creating the lake or engaging in the conduct that allegedly breached the contract, Wasson contends the court of appeals should have focused on the nature of the City's conduct *when* it entered into the lease agreements—the "City's decision to lease the surrounding area for private use."

We agree with Wasson. When we decided in *Wasson I* that the dichotomy applies to breach-of-contract claims, we noted that the court of appeals had not "address[ed] whether *the lease contract was entered into* in the city's proprietary or governmental capacity." *Wasson I*, 489 S.W.3d at 430 (emphasis added). We remanded the case for the court to consider "whether *the contract at issue* was proprietary or governmental," not whether the City breached the contract in

7

either capacity. *Id.* at 439 (emphasis added). Contrary to the court of appeals' understanding, we did not remand for the court to "determine whether the [City's] actions *in terminating*" the lease "is a governmental or proprietary function." 513 S.W.3d at 219 (emphasis added).

Despite our directive in *Wasson I*, the City argues that the court of appeals properly focused on the nature of "the actions complained of," quoting *City of Houston v. Downstream Environmental, L.L.C.*, 444 S.W.3d 24, 32 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("In determining whether a governmental entity is immune from suit, we consider whether the actions complained of were in furtherance of governmental or proprietary functions."). *Downstream* cited *Tooke* as authority, but we said no such thing in *Tooke*. We explained in *Tooke* that a "municipality is not immune from suit for *torts committed* in the performance of its proprietary functions, as it is for *torts committed* in the performance of its governmental functions." 197 S.W.3d at 343 (emphases added). But we did not apply that rule to "breaches committed" in the breach-of-contract context. To the contrary, we explained in *Tooke* that "even if the City were not immune from suit for breach of a contract whose subject lies within its proprietary functions, the Tookes' contract [did] not qualify" because that contract involved governmental functions like "garbage and solid waste removal, collection, and disposal." *Id.* at 343–44. Although we did not decide whether the dichotomy applies to breach-of-contract claims in *Tooke*, we suggested that if it did, the contract's nature would determine the city's immunity, not the nature of the breach.

In addition to *Tooke*, we have suggested in other cases that courts should focus on the nature of the municipality's contracting conduct, not the nature of its breaching conduct. In *City of Corpus Christi v. Gregg*, for example, we held that the city's suit to cancel oil-and-gas-leases was subject to estoppel because the city acted in its proprietary capacity when "making the leases

8

upon which suit was brought." 289 S.W.2d 746, 750 (Tex. 1956). In *Gates*, we held that a city that breached an insurance contract by failing to pay benefits was subject to statutory attorney's fees because it acted in its proprietary capacity when it "entered into the insurance contract." 704 S.W.2d at 739. In *PKG Contracting, Inc. v. City of Mesquite*, we held that immunity barred a breach-of-contract claim against the city because the city "was acting in its governmental capacity when it contracted with PKG to construct a storm drainage system." 197 S.W.3d 388, 389 (Tex. 2006) (per curiam). And in *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, in which we first applied our holding in *Wasson I*, we held that governmental immunity did not shield the city from a claim for attorney's fees for breaching a contract to install pollution-control equipment in a city power plant because the city's actions "in entering the contract" were proprietary. 489 S.W.3d 448, 450 (Tex. 2016).

On the surface, focusing on the breaching conduct may seem reasonable to decide whether immunity applies to a breach-of-contract claim against a municipality. The dichotomy, however, is a tool with a particular purpose: it determines whether a municipality shares the State's sovereign immunity because it was acting "as a branch" of the State, or whether it lacks immunity because it was acting "on its own behalf." *Wasson I*, 489 S.W.3d at 436. We do not see how a city can act as a branch of the State when it breaches a contract it entered on its own behalf and in its proprietary capacity. Even if the City terminated Wasson's leases to enforce the rules that protect the City's water supply, the rules only applied to Wasson because the leases incorporated them by reference, and the City would have had no reason to terminate the leases had it not agreed to them in the first place. Enforcing rules that protect a city's water supply is one matter, but it is another matter to terminate a contract that incorporates those rules.

We hold that, to determine whether governmental immunity applies to a breach-of-contract claim against a municipality, the proper inquiry is whether the municipality was engaged in a governmental or proprietary function when it entered the contract, not when it allegedly breached that contract. Stated differently, the focus belongs on the nature of the contract, not the nature of the breach. If a municipality contracts in its proprietary capacity but later breaches that contract for governmental reasons, immunity does not apply. Conversely, if a municipality contracts in its governmental capacity but breaches that contract for proprietary reasons, immunity does apply. This approach is most consistent with the purposes of both immunity and the governmental/proprietary dichotomy, and it provides clarity and certainty regarding the contracting parties' rights and liabilities.

**IV.**
**The Nature of the City's Activity**

In light of our holding, we must determine whether the City acted in its governmental or proprietary capacity when it leased the lakefront lots to the Wassons. Because the Tort Claims Act does not enumerate leasing property as a governmental or a proprietary function, we must apply the general definitions. As explained, governmental functions "are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM. CODE § 101.0215(a). And proprietary functions are those "that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." *Id.* § 101.0215(b).

Applying these definitions in light of the parties' arguments in this case, we consider whether (1) the City's act of entering into the leases was mandatory or discretionary, (2) the leases were intended to benefit the general public or the City's residents, (3) the City was acting on the

10

State's behalf or its own behalf when it entered the leases, and (4) the City's act of entering into the leases was sufficiently related to a governmental function to render the act governmental even if it would otherwise have been proprietary. We conclude that the City acted in its proprietary capacity when it leased the property to the Wassons.

## A. Mandatory or discretionary

The City's decision to lease its lakefront property to the Wassons was discretionary. "To carry out a municipal purpose, the municipality *may* . . . lease . . . property located in or outside the municipality," but nothing requires it to do so. TEX. LOC. GOV'T CODE § 51.015(a) (emphasis added); *see* TEX. GOV'T CODE § 311.016(1) ("'May' creates discretionary authority or grants permission or a power."). That is why we and the courts of appeals have routinely held that a city's decision to lease city-owned property for private use may constitute a proprietary function.[3] After all, the discretionary management of property has served as a fundamental underpinning of the dichotomy for over one-hundred years. *See Posnainsky*, 62 Tex. at 131 (noting that municipalities are not exempt from liability "in managing or dealing with property or rights held by them for their own advantage or emolument").

As we observed in *Wasson I*, a city can control its contractual liabilities by "refusing to enter into the contract." 489 S.W.3d at 437 n.10. Here, the City had no obligation to lease the

---

[3] *See Gregg*, 289 S.W.2d at 750–51 (holding that in granting an oil and gas lease upon property belonging to it, city was acting in a proprietary capacity and thus subject to estoppel); *City of Dallas v. Trinity E. Energy, LLC*, No. 05–16–00349–CV, 2017 WL 491259, at *4 (Tex. App.—Dallas Feb. 7, 2017, pet. filed) (mem. op.) ("Consequently, we conclude that the City was engaged in a proprietary function when it leased the minerals to Trinity."); *City of Lubbock v. Phillips Petroleum Co.*, 41 S.W.3d 149, 163 (Tex. App.—Amarillo 2000, no pet.) (holding city was subject to the doctrine of estoppel because it acted in its proprietary capacity in executing easement); *City of Crystal City v. Crystal City Country Club*, 486 S.W.2d 887, 889 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.) ("City was acting in its proprietary capacity, as distinguished from governmental capacity, in its dealings with Country Club in executing the lease in question."); *Moore v. City of Beaumont*, 195 S.W.2d 968, 991–92 (Tex. Civ. App.—Beaumont 1946), *aff'd*, 202 S.W.2d 448 (Tex. 1947).

lakefront lots to private parties. It could have left the land unused, used it strictly for the City's purposes, or designated it as parks, a golf course, or some other form of recreational activity. Instead, it chose to generate revenue by granting long-term leases to private parties. We think that, under these circumstances, the City "should have no greater dignity as regards the controversy presented than would any other person who subdivides property and imposes restrictions thereon." *Blythe v. City of Graham*, 287 S.W.2d 527, 530 (Tex. Civ. App.—Fort Worth 1956, writ ref'd n.r.e.). We thus agree with Wasson that the City exercised its discretion when it entered into the leases.

**B.      Public or Resident Benefits**

Generally, a city's governmental functions benefit the general public and its proprietary functions benefit its own residents. TEX. CIV. PRAC. & REM. CODE § 101.0215(a). The City argues that Lake Jacksonville benefits the general public and not just the City's residents. More specifically, the City contends that a proprietary action must be "for the benefit *only* of those within its corporate limits." The City submits that we cannot find the lease agreement to be proprietary because Wasson's leased property is not located within the City's corporate limits. The City claims this geographic distinction is "relevant, if not decisive," and for support relies primarily on *City of Weslaco v. Borne*, 210 S.W.3d 782, 794 (Tex. App.—Corpus Christi 2006, pet. denied) (mobile home park located outside of city's corporate limits did not "militiate[] in favor of classifying the functions as proprietary").

We have not been entirely clear with regard to the "benefits test." We have said that proprietary functions only benefit the municipality's residents, but we have also stated that proprietary acts are those performed "*primarily* for the benefit of those within the corporate limits

of the municipality." *Gates*, 704 S.W.2d at 739 (emphasis added) (citing *City of Crystal City*, 486 S.W.2d at 889).[4] We clarify today that *Gates* states the proper rule. A city's proprietary contracts will often benefit some nonresidents, and its governmental contracts will often benefit some residents, but whether a contract *primarily* benefits one or the other will often indicate whether it is proprietary or governmental.

Here, although non-residents certainly benefited from the City's decision to lease its lakefront property, the record indicates the City's primary objective was to develop the lake and that leasing the properties raised funds for the City's budget.[5] And as Wasson notes, "the very nature of the private Lease Agreements necessarily excludes the general public from benefitting from the premises." We agree with Wasson that the City entered into the leases primarily to benefit its own residents, not the general public.

---

[4] *See Wasson I*, 489 S.W.3d at 433 (noting proprietary acts are performed "for *the private advantage and benefit* of the locality and its inhabitants") (emphasis added) (quoting *Posnainsky*, 62 Tex. at 127); *Tooke*, 197 S.W.3d at 343 ("[P]roprietary functions are those conducted 'in its private capacity, *for the benefit only of those within its corporate limits*, and not as an arm of the government.'") (emphasis added) (quoting *Dilley*, 222 S.W.2d at 993); *City of Gladewater v. Pike*, 727 S.W.2d 514, 519 (Tex. 1987) ("A proprietary function is one intended *primarily for the advantage and benefit* of persons within the corporate limits of the municipality rather than for use by the general public.") (emphasis added); *City of Houston v. Quinones*, 177 S.W.2d 259, 261 (Tex. 1944) ("The underlying test is whether the act performed by a city . . . is performed *primarily for the benefit of those within the corporate limits* of the municipality.") (emphasis added).

[5] *See Trinity E. Energy, LLC*, 2017 WL 491259, at *4 (noting that city's lease of city-owned land for the development of minerals "would benefit the residents within the City's corporate limits, but they would not benefit the public at large, that is, the State"); *City of Dallas v. City of Corsicana*, No. 10–14–00090–CV, 2015 WL 4985935, at *4 (Tex. App.—Waco Aug. 20, 2015, pet. denied) (mem. op.) (noting that "business recruiting via tax abatement is in the category of functions that a municipality may, in its discretion, perform and that, in this situation, benefits the citizens of Dallas, rather than the general public at large"); *City of Lubbock*, 41 S.W.3d at 163 ("The land was purchased to increase groundwater available to the City's residents. That was primarily for the benefit of the residents within the City's limits rather than the public at large. There is nothing essentially governmental about the mere fact of owning real property outside the City or in granting an easement across that property.").

## C.    State's or City's Behalf

Consistent with the nature of sovereign immunity, which protects the State as a sovereign and political subdivisions when they act on the State's behalf,[6] governmental functions are those in which a city acts as a "branch of the state," *Wasson I*, 489 S.W.3d at 430, or an "arm of the government," *Tooke*, 197 S.W.3d at 343, rather than on its own behalf. Here, we conclude the City acted on its own behalf by leasing its lakefront property, not on behalf of the State. The fact that the City's decision to lease the property was entirely discretionary and primarily benefitted the City's residents supports this conclusion, and we find no facts to counter it. *See Wasson I*, 489 S.W.2d at 436 ("When a city performs discretionary functions on its own behalf, it ceases to derive its authority—and thus its immunity—from the state's sovereignty. Such proprietary functions, therefore, do not stem from the root of immunity that is 'the people,' and lacking that common root, they cannot be performed as a branch of the state.") (internal citations omitted).

## D.    Relation to a governmental function

Finally, we consider the extent to which the City's decision to lease the lakefront lots was related to its governmental functions. The City contends it acted in its governmental capacity when it entered into the lease agreements because the "overarching purpose" of the leases, rules, and regulations "centers on the development of a water supply reservoir used as part of the City's waterworks." The court of appeals essentially agreed. It observed: "In and of itself, a lease of real

---

[6] Technically, "sovereign immunity" protects the State, while "governmental immunity" protects political subdivisions. *See Wasson I*, 489 S.W.3d at 430 (referring to "the realm of sovereign immunity as it applies to such political subdivisions" as "governmental immunity").

14

property by a city could be a proprietary function in certain circumstances. But when it is on real property used for a government purpose, it becomes part of that governmental function." 513 S.W.3d at 222. According to the court, when a city's activity involves "mixed functions, the rule is that if any one component of a function is governmental, the entire function will be considered governmental." *Id.* at 221.

We disagree. We have long held that not all activities "associated" with a governmental function are "governmental." In *Shilling*, for example, we rejected the argument that a city's discretionary operation of a garbage-truck repair shop was a governmental function because it was necessary to perform the city's governmental function of garbage collection. 240 S.W.2d at 1011–12. Noting that the city's argument "would lead to the conclusion that in any operation necessary to the collection of garbage the city would be immune to liability for the acts of its employees," we held that a "line must be drawn at which point the city ceases to be immune to liability." *Id.* at 1012.

Consistent with our decision in *Shilling*, the courts of appeals "repeatedly have recognized that governmental functions encompass activities that are *closely related to or necessary* for performance of the governmental activities designated by statute." *City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 356 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (emphasis added).[7] We agree this statement more closely depicts the proper rule. The fact that a city's

---

[7] *See also Davis v. City of Lubbock*, No. 07–16–00080–CV, 2018 WL 736344, at *4 (Tex. App.—Amarillo Feb. 6, 2018, no pet. h.) (mem. op.) ("[T]he sale of the baled hay is sufficiently closely related to the performance of the City's TCEQ-permitted activities as to come within the governmental functions the permit authorizes."); *Smith v. City of League City*, 338 S.W.3d 114, 128 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding city's decisions concerning bridge "were closely related to the governmental function of 'bridge construction and maintenance.'"); *City of Elgin v. Reagan*, No. 03–06–00504–CV, 2009 WL 483344, at *3 (Tex. App.—Austin Feb. 26, 2009, no pet.) (mem. op.) (allowing the public to adopt animals from a city-owned shelter was "so closely related to" the enumerated

15

proprietary action "touches upon" a governmental function is insufficient to render the proprietary action governmental. *City of Corpus Christi v. Absolute Indus.*, 120 S.W.3d 1, 4 (Tex. App.—Corpus Christi 2001, pet. denied) (holding that city's threat to retaliate against refineries that did not use city's landfill was proprietary, even though it "touche[d] upon waste and disposal to [a] remote degree"); *see also Williams v. City of Midland*, 932 S.W.2d 679, 683–84 (Tex. App.—El Paso 1996, no writ); *City of Dallas v. Arnett*, 762 S.W.2d 942, 953 (Tex. App.—Dallas 1988, writ denied). Instead, a city's proprietary action may be treated as governmental only if it is essential to the city's governmental actions.

The Tort Claims Act identifies "waterworks," "reservoirs," and "water and sewer service" as governmental functions. TEX. CIV. PRAC. & REM CODE § 101.0215(a)(11), (19), (32). Relying on these designations, the court of appeals concluded that the City's conduct in leasing the lakefront property was also governmental because it was merely a part of the City's broader conduct in support of a governmental function.[8] We disagree, because the City's leasing of the lakefront property was not "essential" to the City's operation or maintenance of the lake.

Having considered the definitions and the parties' arguments, we conclude that the City was performing a proprietary function—not a governmental function—when it leased its lakefront property to the Wassons. As we noted in *Wasson I*, drawing this distinction "is not always a cut-

---

governmental function of "animal control" as to be governmental); *Ethio Exp. Shuttle Serv., Inc. v. City of Houston*, 164 S.W.3d 751, 756 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding operation of shuttle service to airport was "well aligned" with enumerated governmental functions of "airports, regulation of traffic, and transportation systems"); *Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, 356 (Tex. App.—San Antonio 2000, pet. denied) ("Clearly, the City's removal of TRB's barge from the City-owned marina was a governmental function, since the Act expressly defines the operation of marinas as a governmental function.").

   [8] *See* 513 S.W.3d at 221 (holding that because the Tort Claims Act "specifically classifies 'reservoirs,' 'waterworks,' and 'water and sewer service' as governmental functions," "[t]he operation and maintenance thereof are likewise governmental functions") (quoting TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(11), (19), (32)).

16

and-dried task." 489 S.W.3d at 438. Based on the common-law and statutory definitions, we have considered four factors relevant to these facts. In some cases, some factors may point to one result while others point to the opposite result. In such cases, courts should consider immunity's nature and purpose and the derivative nature of a city's access to that protection. Here, however, all four relevant factors establish that the City was performing a proprietary function when it leased its lakefront property. As a result, governmental immunity does not protect the City against Wasson's suit for breach of the lease agreements.

## V.
## Conclusion

We held in *Wasson I* that the governmental/proprietary dichotomy applies to the determination of whether governmental immunity bars a breach-of-contract claim against a municipality. We hold today that the nature of the function the municipality was performing when it entered into the contract governs that analysis. In this case, we hold that the City was engaged in a proprietary function when it leased its lakefront lots to the Wassons, and thus governmental immunity does not bar Wasson's claim that the City breached those leases.

Because the court of appeals affirmed the trial court's summary judgment on the ground that governmental immunity bars Wasson's claim, it did not address any of the City's other summary-judgment grounds. Having concluded that governmental immunity does not bar Wasson's claim, we reverse the court of appeals' judgment and remand the case to that court so that it may consider the City's additional grounds.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: October 5, 2018

17