**Dissenting Opinion Filed October 2, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00239-CV

**BARBARA STEGALL, INDIVIDUALLY, AND ON BEHALF OF THE ESTATE OF JOE STEGALL, Appellant**

**V.**

**TML MULTISTATE INTERGOVERNMENTAL EMPLOYEE BENEFITS POOL, INC., AND UMR, INC., Appellees**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-16-05440-D**

## DISSENTING OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Dissenting Opinion by Justice Partida-Kipness

The majority concludes that TML is a governmental entity entitled to immunity from Barbara Stegall's ("Stegall") tort claims, and that UMR, as a third-party administrator for TML, enjoys the same governmental immunity. The majority also concludes that the "governmental–proprietary distinction" applied to municipalities does not apply to TML. In so holding, the majority provides TML and UMR with broader immunity protection from tort claims than the protection municipalities enjoy by protecting TML and UMR from claims related to their performance of both governmental and proprietary acts. Because I disagree with the majority's conclusions that the governmental–proprietary dichotomy does not apply here and that TML and UMR are entitled to immunity from Stegall's tort claims, I respectfully dissent and would reverse the granting of appellees' pleas to the jurisdiction.

It is well established that municipalities exercise their broad powers by performing proprietary and governmental functions. *See Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2018) ("*Wasson II*"). This "governmental–proprietary dichotomy" recognizes that immunity protects a municipality from suits based on the entity's performance of a governmental function but does not protect the entity from suits based on the entity's performance of a proprietary function. *Id.* The dichotomy "is based on the reality that sovereign immunity is inherent in the State's sovereignty, and municipalities share that protection when they act 'as a branch' of the State but not when they act 'in a proprietary, non-governmental capacity.'" *Id.* (quoting *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 430 (Tex. 2016) ("*Wasson I*")).

This case, of course, does not involve a municipality. TML is an intergovernmental self-insurance risk pool that operates under the Texas Interlocal Cooperation Act, and UMR is TML's third-party administrator. I disagree with the majority's conclusion that those facts alone bar application of the governmental–proprietary distinction. The Texas Supreme Court has not determined that the governmental–proprietary distinction applies only to municipalities, and Stegall's claims are based on TML's and UMR's performance of proprietary, not governmental, functions.

Although the governmental entity at issue in *Wasson I* and *Wasson II* was a municipality, the Texas Supreme Court has not restricted the applicability of the dichotomy to municipalities. Rather, the Texas Supreme Court has only specifically declined to apply the dichotomy to governmental entities that are strictly governmental in function and perform no proprietary functions. *See Wasson I*, 489 S.W.3d at 430, n. 3 (noting that the dichotomy does not apply to counties and school districts and thus, "in practice … only applies to municipalities" because counties and school districts have no proprietary function separate and independent from their

governmental powers and functions) (citing *Nueces Cty. v. San Patricio Cty.*, 246 S.W.3d 651, 652 (Tex. 2008) (per curiam); *Braun v. Trs. of Victoria Indep. Sch. Dist.*, 114 S.W.2d 947, 950 (Tex. App.—San Antonio 1938, writ ref'd)). In its earlier opinion in *Ben Bolt-Palito Blanco Consolidated Independent School District v. Texas Political Subdivisions Property/Casualty Joint Self-Insurance Fund*, the Texas Supreme Court similarly emphasized that governmental immunity was limited to a governmental entity's performance of governmental functions. 212 S.W.3d 320, 326 (Tex. 2006) (risk pool "entitled to assert immunity in its own right *for the performance of a governmental function*" and "enjoys the same governmental immunity as other political subdivisions") (emphasis added). That case involved a breach of contract claim in which the plaintiff argued the pool's immunity was waived by statute and, as such, did not address whether that immunity is waived for tort claims arising from the exercise of proprietary functions. *Id.*

Further, unlike a county or school district, TML and UMR are not merely governmental units performing governmental tasks that serve the public. TML and UMR also perform proprietary, non-governmental functions, and Stegall's claims arise from their performance of those functions. Generally, governmental functions consist of a municipality's activities in the performance of purely governmental matters solely for the public benefit. *Wasson II*, 559 S.W.3d at 147. Proprietary functions are those performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality and not as an arm of government. *Id.*; *see also NMF P'ship v. Dallas Cty.*, No. 05-17-00747-CV, 2018 WL 3301593, at *3 (Tex. App.—Dallas July 5, 2018, no pet.) (mem. op.). In *Wasson II*, the Texas Supreme Court provided four factors to consider when determining if an entity performed a proprietary function:

(1) whether the act was mandatory or discretionary;

(2) whether the act was intended to benefit the general public or the political subdivision's constituents;

(3) whether the political subdivision was acting for the State or on its own behalf; and

(4) whether the act was sufficiently related to a governmental function to render it governmental even if it would otherwise have been proprietary.

*Wasson II*, 559 S.W.3d at 150.

By creating and participating in the risk pool, TML performed a governmental function for which immunity applies. *See Ben Bolt-Palito*, 212 S.W.3d at 325–26. The governmental nature of its actions, however, ended with that pooling. Stegall maintains that TML and UMR caused the wrongful death of her husband through improper claims adjustment procedures and decisions. She argues that TML and UMR denied Mr. Stegall chemotherapy ordered by his physician, withheld coverage authorizations, interfered with his access to chemotherapy through other means, and failed to inform Mr. Stegall that TML had belatedly approved coverage of the chemotherapy. Those actions are not governmental functions because they are decisions related to the adjusting of an individual insurance claim. *E.g., Cawthorn v. City of Houston*, 231 S.W. 701, 705 (Tex. Comm'n App. 1921, holding approved) (city was acting in proprietary capacity by hauling sand with its own teams, distributing it generally over the city, and "in adjusting claims for damages arising therefrom. . .."); *see GAB Bus. Servs., Inc. v. Moore*, 829 S.W.2d 345, 350–51 (Tex. App.— Texarkana 1992, no writ) (insurance adjuster who contracted to handle workers' compensation claims brought against members of intergovernmental risk pool was not entitled to governmental immunity because it was not performing "uniquely governmental duties" when adjusting the claims but was, instead, "acting just as an adjuster for a private insurance company would").

Those actions also meet the four-part test for proprietary functions set out in *Wasson II*. First, they were discretionary decisions made by TML or UMR. No statute, law, or contract required TML or UMR to deny the treatment, interfere with the treatment, or fail to inform Mr. Stegall of the changed decision concerning coverage for treatment. Second, these decisions did

not serve the general public. These decisions relate to one fund member and no one else. Similarly, the decisions did not serve the State. And, finally, these decisions were not sufficiently related to a governmental function to render them governmental. These decisions were made in the same manner a claims adjuster would handle an insurance claim in the private sector and were, thus, not governmental in nature. *See, e.g., GAB Bus. Servs.*, 829 S.W.2d at 351.

While we are "vested with the authority to interpret the law,"[1] there is no reason not to extend the application of the governmental–proprietary distinction to political subdivisions such as the one in this case. To do otherwise accomplishes an absurd result—the removal of logic and humanity from application of the law. I cannot join an opinion which does so and, accordingly, I respectfully dissent.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

180239DF.P05

---

[1] Majority Opinion at 1 (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012)).