# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 1, 2023

Lyle W. Cayce
Clerk

No. 22-50038

LABORFEST, L.L.C.; LARRY WILLIAMS,

*Plaintiffs—Appellants*,

*versus*

CITY OF SAN ANTONIO; "JOHN DOES" UNKNOWN CITY
EMPLOYEES,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:19-CV-60

Before GRAVES, HO, and DUNCAN, *Circuit Judges*.

PER CURIAM:*

Laborfest LLC contracted with the City of San Antonio, Texas ("the City") to lease the City's convention center for a concert. The concert did not go as planned. Laborfest could not pay some of the scheduled acts, who refused to perform, forcing Laborfest to cancel the concert. Laborfest then sued the City, alleging the City defrauded Laborfest by undercounting ticket

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 22-50038

sales and withholding proceeds, causing the concert's downfall. The district court ruled that Laborfest's claims were barred by governmental immunity, and it also denied Laborfest's motion to amend its complaint for the eleventh time. We affirm.

## I.

Laborfest is a promotional company that organizes music festivals. In 2016, it contracted with the City to lease the Henry B. Gonzales Convention Center. Laborfest planned to host a concert at the convention center featuring nationally acclaimed artists. The contract stipulated that all ticket sales would take place through Ticketmaster as the City's exclusive ticketing agent.

Unfortunately, the concert was not a success. Laborfest received only meager revenue from ticket sales and was unable to pay many of the artists, who refused to perform. Laborfest had to cancel the concert. Laborfest alleges that the City provided it with "altered and false reports about ticket sales," systematically underreporting ticket sales to avoid remitting the proceeds to Laborfest.

Laborfest sued the City in state court for breach of contract. After Laborfest amended its complaint several times and added federal claims, the City removed to federal court. Laborfest amended its complaint several more times, and the operative complaint is its Tenth Amended Complaint. As relevant here, that complaint brings claims under Texas law for breach of contract, tortious interference with a prospective economic relationship, negligence, negligent misrepresentation, conversion, and fraud.

The City moved for summary judgment on Laborfest's state law claims and, while that motion was pending, Laborfest moved to amend its complaint for an eleventh time. The district court denied Laborfest's motion, finding that it was untimely and that amendment would require reopening discovery. The court subsequently granted summary judgment for the City,

holding that the City was entitled to governmental immunity because it was performing a governmental function when it entered the contract.[1]

Laborfest now appeals the summary judgment, which we review *de novo*. *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018). It also appeals the denial of leave to amend its complaint, which we review for abuse of discretion. *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002).

## II.

Municipalities in Texas enjoy governmental immunity when they perform governmental functions but not when they perform proprietary functions. *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429–30 (Tex. 2016) ("*Wasson I*"). The Texas Constitution empowers the legislature to draw the line between those two categories. *See* Tex. Const. art. XI, § 13(a) ("[T]he legislature may by law define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law."). The legislature exercised that power in the Texas Tort Claims Act ("TTCA"). *See* Tex. Civ. Prac. & Rem. Code § 101.0215. The TTCA generally defines governmental and proprietary functions, while also delineating certain functions that fall conclusively on one side of the divide. *See id.* § 101.0215(a), (b). One function designated as governmental in the context of tort suits is operating "civic, convention centers, or coliseums." *Id.* § 101.0215(a)(16).

This dichotomy between governmental and proprietary functions also applies to suits against municipalities for breach of contract. *Wasson I*, 489

---

[1] The district court granted the City summary judgment on Laborfest's federal law claims as well as its state law claims. Laborfest has not briefed its federal claims on appeal, so we do not consider them. *See Willis v. Cleco Corp.*, 749 F.3d 314, 319 (5th Cir. 2014).

No. 22-50038

S.W.3d at 439. To determine whether a breach of contract suit implicates a municipality's governmental or proprietary functions, courts follow a three-step inquiry. First, courts defer to the TTCA if the function at issue is specifically enumerated there as governmental or proprietary. *Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 704–05 (Tex. 2019); *see also Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 452 (Tex. 2016) (reaffirming "the appropriateness of deferring to the TTCA when classifying acts in the contract-claims context").[2] If the function is not enumerated, courts apply the TTCA's general definitions of governmental and proprietary functions using a four-factor test.[3] *Hays St. Bridge Restoration Grp.*, 570 S.W.3d at 705. Finally, if the four factors point in different directions, courts classify the function as governmental or proprietary in light of "immunity's nature and purpose and the derivative nature of a city's access to that protection." *Ibid.* (quoting *Wasson Ints., Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 154 (Tex. 2018) ("*Wasson II*")).

---

[2] Strictly speaking, the TTCA's enumeration of governmental and proprietary functions is persuasive rather than binding in the context of contract claims. *Hays St. Bridge Restoration Grp.*, 570 S.W.3d at 705 n.46. But in practice, Texas courts, including the Texas Supreme Court, give the TTCA's classifications dispositive weight. *See Wasson Ints., Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 150 (Tex. 2018) ("*Wasson II*") ("Because the Tort Claims Act does not enumerate leasing property as a governmental or a proprietary function, we must apply the general definitions."); *M.E.N. Water Supply Corp. v. City of Corsicana*, 564 S.W.3d 474, 487 (Tex. App. 2018) (holding, in a breach of contract suit, that "[i]f the City's actions are listed as a governmental function under the TTCA, we have no discretion, regardless of the City's motives, to declare the actions as proprietary").

[3] Those factors are: (1) whether the city's act of entering the contract was mandatory or discretionary; (2) whether the contract was intended to benefit the city's residents or the general public; (3) whether the city acted on the state's behalf in entering the contract; and (4) whether entering the contract was so related to a governmental function as to render the contract governmental even if it would have otherwise been proprietary. *Wasson II*, 559 S.W.3d at 150.

No. 22-50038

The first step is determinative here because the TTCA enumerates the operation of "civic, convention centers, or coliseums" as a governmental function, *see* Tex. Civ. Prac. & Rem. Code § 101.0215(a)(16), and the City's contract with Laborfest was essentially about the City's convention center. The relevant inquiry is "whether the municipality was engaged in a governmental or proprietary function when it entered the contract, not when it allegedly breached that contract." *Wasson II*, 559 S.W.3d at 149. In other words, "the focus belongs on the nature of the contract, not the nature of the breach." *Ibid.* Laborfest claims the City breached the contract by underreporting ticket sales and withholding money from Laborfest. That focuses on the nature of the breach, however. By contrast, the contract's basic point was for Laborfest to obtain the use of the center. The very first section provides that the City "agree[s] to furnish certain space . . . located in the San Antonio Convention Facilities," while Laborfest agrees to pay "for the right herein granted to use the [convention center.]" The district court was therefore correct that the contract concerns the operation of "civic, convention centers, or coliseums" under the TTCA. *See, e.g.*, *Hays Street Bridge Restoration Grp.*, 570 S.W.3d at 705 (city's contract to revitalize bridge and surroundings fell within TTCA's governmental functions of "bridge construction and maintenance" and "community development or urban renewal activities").

Laborfest argues that even if the contract's "underlying function" is governmental, precedent allows us to "split" the contract into "discrete functions" and focus on the City's leasing and ticketing duties, which Laborfest argues are proprietary functions. We disagree. To hair-split the contract in this way ignores the Texas Supreme Court's command to focus on "the nature of the function the municipality was performing when it

entered into the contract," rather than the particulars of the alleged breach. *Wasson II*, 559 S.W.3d at 154; *id.* at 149.[4]

Finally, Laborfest argues that any immunity the City may have is waived by a provision of the government code concerning procurement contracts. *See* Tex. Loc. Gov't Code § 271.152. But Laborfest forfeited this argument by failing to raise it before the district court. *See Def. Distributed v. Grewal*, 971 F.3d 485, 496 (5th Cir. 2020). Indeed, the district court noted that Laborfest did not argue waiver in opposing summary judgment. Laborfest cannot do so for the first time here. *See Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 504 (5th Cir. 2012).[5]

In sum, the district court correctly granted the City summary judgment based on governmental immunity.

## III.

Laborfest also argues that the district court abused its discretion in denying it leave to file an eleventh amended complaint. We disagree.

Because Laborfest filed its motion after the deadline to amend pleadings, it had to show good cause. *See* Fed. R. Civ. P. 16(b)(4); *see also*

---

[4] Even if we accepted Laborfest's framing and found the leasing and ticketing were proprietary functions, Laborfest would still not prevail. The Texas Supreme Court has explained that "a city's proprietary action may be treated as governmental . . . if it is essential to the city's governmental actions." *Wasson II*, 559 S.W.3d at 153; *see also City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 356 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (similar). That is the case here. When a city owns a convention center, providing leasing and ticketing services are "essential" to the city's performance of that governmental function.

[5] In any event, the waiver argument is meritless. Laborfest relies on a provision waiving immunity for contract claims arising out of "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity." Tex. Loc. Gov't Code § 271.151(a); *id.* § 271.152. That provision is inapplicable because the contract here involved the City providing services to Laborfest, not vice versa. *See M.E.N. Water Supply Corp.*, 564 S.W.3d at 489–90 (addressing a similar argument based on § 271.152).

*Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003). Four factors govern whether good cause exists: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Sw. Bell Tel. Co.*, 346 F.3d at 546 (quoting *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

Laborfest addresses only the first factor, arguing it obtained discovery in May and August 2021 that required amendment to add new facts and claims. But this does not explain why it waited until October 2021 to file its motion, more than a year after the amendment deadline of August 2020. In any event, Laborfest fails to address the other factors. For example, as the district court noted, Laborfest's motion came well after the close of discovery and after the City had already moved for summary judgment. It is particularly prejudicial to try to amend pleadings after summary judgment motions have been filed. *See Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 239 (5th Cir. 2015); *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (per curiam).

The district court did not abuse its discretion in denying Laborfest's eleventh motion to amend.

AFFIRMED.