

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00431-CV

———————————————

CITY OF FORT WORTH, Appellant

V.

JDB TOWING, LLC, Appellee

———————————————

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-340257-23

———————————————

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

The City of Fort Worth filed this interlocutory appeal from the trial court's order denying its motion to dismiss for lack of jurisdiction Appellee JDB Towing, LLC's tortious-interference-with-contract claim. The City contends that the trial court erred by denying its motion to dismiss because JDB's tortious-interference claim stems from the City's performance of a governmental function—namely, police-purpose vehicle towing—and the City is therefore immune from liability. We agree with the City that police-purpose towing is a governmental function because it is an essential part of its broader police power and that the City therefore has governmental immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(1). Because the City is immune from liability, we reverse the trial court's ruling and render judgment dismissing JDB's tortious-interference claim.

## I. BACKGROUND

The Fort Worth Police Department (FWPD) routinely has vehicles towed for official police purposes. Such police-purpose towing is necessary in a variety of circumstances, including when a vehicle's location or condition presents a hazard to the traveling public or when a vehicle has been stolen or used in the commission of a crime and needs to be secured to preserve evidence for later prosecution. The Texas Transportation Code not only authorizes such police-purpose towing but also authorizes police departments to contract with private towing companies to assist with it. *See* Tex. Transp. Code Ann. §§ 545.305, 683.011.

In 2018, the City decided to stop managing police-purpose tows itself and engaged TEGSCO LLC d/b/a AutoReturn, a California-based company specializing in municipal-towing-program management, to liaise between FWPD personnel and local towing companies. As the City's towing liaison, AutoReturn takes towing requests from police officers in the field, assigns these requests to an approved towing company on a rotating basis, and facilitates payments.

Under the City's contract with AutoReturn, FWPD created a list of approved tow providers, and the companies on that list were then eligible to enter into a separate contract with AutoReturn. AutoReturn is required to enter into a licensing agreement with each FWPD-approved towing company allowing access to AutoReturn's software, which is used to facilitate the towing program.

JDB, as one of the tow providers on FWPD's approved list, entered into a software-licensing agreement with AutoReturn. In February 2023, the Fort Worth Chief of Police decided to stop using JDB for police-purpose towing and removed it from the list of approved tow providers. This removal prohibited AutoReturn from assigning future FWPD towing jobs to JDB and triggered an automatic termination clause in JDB's software-licensing agreement with AutoReturn.

In response, JDB filed the present lawsuit alleging that the City had tortiously interfered with its licensing agreement with AutoReturn and that the termination of this agreement had caused JDB to suffer damages in the form of lost business towing vehicles for FWPD. The City filed a motion to dismiss JDB's lawsuit for lack of

3

jurisdiction in which it argued that it was immune from liability because JDB's tortious-interference claim arose from the City's performance of a governmental function.[1]  Following a hearing, the trial court denied the City's motion to dismiss. This accelerated interlocutory appeal followed.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8); Tex. R. App. P. 28.1(a).

## II.  STANDARD OF REVIEW

Sovereign immunity from suit defeats a trial court's subject matter jurisdiction. *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 731 (Tex. 2020); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex. 1999).  Sovereign immunity is inherent in the state's sovereignty, and certain local governmental entities—including municipalities—enjoy a similar protection called governmental immunity.  *See Univ. of the Incarnate Word v. Redus*, 602 S.W.3d 398, 404–05 (Tex. 2020); *see also Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 703 (Tex. 2019) (explaining that "[s]overeign immunity protects the state and its divisions, while governmental immunity protects political subdivisions").  But municipalities are immune "only when they act 'as a branch' of the state and not when they act 'in a proprietary, non[]governmental

---

[1]The City's motion was a combined motion to dismiss for lack of jurisdiction and for summary judgment.  This interlocutory appeal concerns only the trial court's denial of the motion to dismiss for lack of jurisdiction.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (authorizing interlocutory appeal from the denial of a governmental unit's plea to the jurisdiction); *see also United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("The general rule is that a denial of a summary judgment cannot be reviewed on appeal." (citing *Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996))).

4

capacity.'" *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 366–67 (Tex. 2019) (quoting *Wasson Ints., Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2018) (*Wasson II*)); *see Univ. of the Incarnate Word*, 602 S.W.3d at 404–05. Determining whether a municipality is immune from a given cause of action is a two-step analysis: we "first determine whether the subject matter of the suit stems from a proprietary or a governmental function of the municipality," and then, if "the action arose out of the municipality's performance of a governmental function, immunity applies [unless] overcome by a [plaintiff's] establishing a valid waiver." *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 451–52 & n.3 (Tex. 2016); *see City of Westworth Vill. v. City of White Settlement*, 558 S.W.3d 232, 241 (Tex. App.—Fort Worth 2018, pet. denied).

We review both steps of this analysis de novo. *See Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021); *Wheelabrator Air Pollution Control, Inc.*, 489 S.W.3d at 451. In doing so, we consider the pleadings, the factual assertions, and all relevant evidence in the record. *See City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018).

## III. DISCUSSION

The City's sole appellate issue is patterned after its argument in the trial court. Specifically, the City contends that it has governmental immunity because (1) JDB's tortious-interference claim arises from the City's performance of a governmental

function—namely, police-purpose towing—and (2) the Texas Tort Claims Act (TTCA) does not waive immunity for intentional torts. We agree.

## A. Applicable Law: Proprietary v. Governmental Functions

Generally, activities "enjoined on a municipality by law . . . to be exercised by the municipality in the interest of the general public" are governmental functions, while activities normally performed by a municipality "in its discretion . . . [and] in the interest of [its] inhabitants" are proprietary. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a), (b); *Wasson Ints, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 438–39 (Tex. 2016) (*Wasson I*). Although the line between proprietary and governmental functions "has not been a clear one," *Wasson I*, 489 S.W.3d at 438–39 (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006)), as to certain functions the legislature provided clarification by statutorily identifying them as either proprietary or governmental. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215; *Wasson I*, 489 S.W.3d at 438–39; *see also* Tex. Const. art. XI, § 13(a) (authorizing "the legislature by law [to] define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary"). If a municipality is performing a governmental function, and particularly when that governmental function is expressly designated as such by statute, the municipality has governmental immunity. *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 388–89 (Tex. App.—Fort Worth 2008, no pet.) (recognizing that "[i]f a function is included in this nonexclusive list of governmental functions, the [l]egislature has deemed it

6

governmental in nature, and we have no discretion or authority to hold otherwise"); *see Hunnicutt v. City of Webster*, 641 S.W.3d 584, 591–92 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (similar).

## B. Application

The legislature has statutorily designated "police . . . protection and control" as a governmental function. Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(1). Thus, to the extent that police-purpose towing constitutes an exercise of the City's police power, the City has governmental immunity from JDB's tortious-interference claim.[2] *See Doe v. City of Fort Worth*, 646 S.W.3d 889, 898 (Tex. App.—Fort Worth 2022, no pet.).

As noted, the Texas Legislature has specifically vested law enforcement agencies with the authority to tow vehicles under certain circumstances. *See* Tex.

---

[2]JDB argues that its tortious-interference claim arises from a proprietary function because "[t]he City's decision to contract with AutoReturn to manage its towing program . . . [is a] discretionary business decision[] made for the benefit of Fort Worth residents." But as we have recognized, a city has the discretion to perform its governmental functions through private contractors. *See Doe*, 646 S.W.3d at 899. Thus, to the extent that police-purpose towing is a governmental function, so too is the City's decision to contract with AutoReturn to manage the FWPD's towing program. *See PKG Contracting, Inc. v. City of Mesquite*, 197 S.W.3d 388, 388–89 (Tex. 2006) (holding that because "sanitary and storm sewers" is an enumerated governmental function in the TTCA, the City of Mesquite was acting in a governmental capacity when it contracted with the appellant to construct a storm drain); *City of San Antonio v. Butler*, 131 S.W.3d 170, 177–78 (Tex. App.—San Antonio 2004, pet. denied) (holding that because selling alcohol at the Alamodome was a governmental function, so too was the city's act of engaging a private vendor to sell it).

Transp. Code Ann. § 545.305. This express statutory authorization suggests that police-purpose towing is an integral part of the City's police and traffic-regulation powers. *See City of Dallas v. Asemota*, No. 05-20-00664-CV, 2021 WL 777089, at *2–3 (Tex. App.—Dallas Mar. 1, 2021, no pet.) (mem. op.) (holding that statutory framework authorizing law enforcement agencies to sell abandoned vehicles at auction and directing that such proceeds be used for law-enforcement-agency purposes "ma[de] clear that [Dallas's] operation of [an] impound lot, including its auction of abandoned vehicles, [was] an integral part of the [c]ity's police and traffic[-]regulation powers"). Indeed, although we have not found any Texas cases directly on point, a number of courts in other jurisdictions have specifically recognized that police-purpose towing falls under the umbrella of a city's broader police powers. *See Goichman v. City of Aspen*, 859 F.2d 1466, 1470 (10th Cir. 1988) ("In towing cases, the state is acting pursuant to a legitimate exercise of its police power. The impoundment and towing of illegally parked vehicles is an action taken in order to promote safety and public welfare."); *Lacambra v. Cal. Dep't of Motor Vehicles*, No. 8:21-cv-01643, 2022 WL 508353, at *8 (C.D. Cal. Jan. 25, 2022) ("[T]owing the car because of an expired registration was an exercise of the City's police powers . . . ."); *Gillam v. Landrieu*, 455 F. Supp. 1030, 1037 (E.D. La. 1978) (recognizing that "[t]owing and impounding are reasonable procedures to effectuate [a city's] police power against antisocial car owners"); *Kurman v. City of Newark*, 304 A.2d 768, 771 (N.J. Super. Ct. App. Div. 1973) ("The towing and storage of . . . vehicles is performed under the

8

police power of [the City of] Newark."); *cf. Clark v. Storey Wrecker Serv., Inc.*, No. 03-CV-638, 2005 WL 8174776, at *7 (N.D. Okla. July 21, 2005) (order) (finding that "any wreck o[r] disabled vehicle that results in the blocking or slowing of traffic on the roadways increases the risk of wrecks for other vehicles, thus potentially threatening the public welfare").

JDB cites *Lamesa v. Hutchinson*, 336 S.W.2d 861, 864 (Tex. App.—Eastland 1960, writ ref'd n.r.e.), for the proposition that towing constitutes a proprietary—not a governmental—function, but this case is inapposite. First, the relevant question here is whether *police-purpose* towing—not towing in general—constitutes a governmental function. Second, *Lamesa* never specifically held that general-purpose towing was a proprietary function. *Lamesa* concerned a wrongful-death suit filed by the widow of a city street-department employee, who was accidentally struck by a vehicle and killed while working to pull a stuck street-department vehicle from the mud using a bulldozer. *Id.* at 863. The court of appeals rejected the city's claim that it had governmental immunity because the work that the deceased "[had been] performing on the date and at the time of his fatal accident"—namely, "hauling . . . brush and tree limbs and grass from the streets and alleys of the city" and "hitching and unhitching [a] chain to and from the [stuck] truck and the [bull]dozer"—did not fall within the scope of a governmental function. *Id.* at 864. Thus, *Lamesa* does not stand for the proposition that general-purpose towing

constitutes a proprietary function, and even if it did, the same would not necessarily hold true for police-purpose towing.

In light of the foregoing authorities, we conclude that police-purpose towing constitutes an exercise of the City's broader police power, a function that the legislature has designated as governmental. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(1). JDB attempts to show that the action was a proprietary function by applying the factors identified by the Texas Supreme Court for distinguishing between proprietary and governmental functions. *See Wasson II*, 559 S.W.3d at 150. But these factors do not apply if the function at issue is among those listed in Section 101.0215(a). *Asemota*, 2021 WL 777089, at *3 (first citing *City of McKinney v. KLA Int'l Sports Mgmt, LLC*, No. 05-20-00659-CV, 2021 WL 389096, at *3 (Tex. App.—Dallas Feb. 4, 2021, no pet.); and then citing *Santander Consumer USA, Inc. v. City of San Antonio*, No. 04-20-00341-CV, 2020 WL 7753730, at *9 (Tex. App.—San Antonio Dec. 30, 2020, no pet.)).

Because JDB's tortious-interference claim is based on the City's performance of a function specifically designated as governmental in Section 101.0215(a), the trial court has jurisdiction only if there is a valid waiver of immunity. *See id.* (citing *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002)). For tort claims like the one alleged by JDB, such waiver must come, if at all, from the TTCA. *See City of Houston v. Sw. Concrete Constr., Inc.*, 835 S.W.2d 728, 730 (Tex. App.—Houston [14th Dist.] 1992, writ denied). But the TTCA does not waive immunity for

10

intentional torts such as tortious interference with contract.[3] *See Ethio Express Shuttle Serv., Inc. v. City of Houston*, 164 S.W.3d 751, 758 (Tex. App.—Houston [14th Dist.] 2005, no pet); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (providing that waiver of immunity "does not apply to a claim . . . arising out of assault, battery, false imprisonment, *or any other intentional tort . . . .*" (emphasis added)). Accordingly, the trial court lacks jurisdiction over JDB's tortious-interference claim. *See Nettles*, 606 S.W.3d at 731.

## IV. CONCLUSION

Having concluded (1) that the City is immune from JDB's tortious-interference claim because it arises from the City's performance of a governmental function and (2) that the TTCA does not waive the City's immunity, we reverse the trial court's ruling and render judgment dismissing JDB's tortious-interference claim for lack of subject matter jurisdiction.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: February 12, 2026

---

[3]Indeed, JDB has not argued—either in the trial court or in its appellate briefing—that the City's immunity is waived under the TTCA.

11