# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00015-CV

**City of Austin, and City of Austin d/b/a Austin Energy, Appellants**

**v.**

**Kevin C. Findley, Individually and as An Heir of Erica Findley, and on Behalf of All Those Entitled to Recover for The Death of Erica Findley Under The Texas Wrongful Death Act; Pamela Findley, Individually and as An Heir of Erica Findley; and Jason Halstead, Individually, Surviving Spouse and as An Heir of Erica Findley and As Representative of The Estate of Erica Findley, Appellees**

## FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
## NO. D-1-GN-20-000897, THE HONORABLE TIM SULAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is a wrongful death and survival action arising out of a fatal train accident. The City of Austin d/b/a Austin Energy appeals from an order overruling its plea to the jurisdiction based on governmental immunity. *See* Tex. Civ. Prac. & Rem. Code § 51.014(8) (authorizing interlocutory appeal of order overruling plea to jurisdiction filed by governmental unit). We reverse and render.

### BACKGROUND

At around 10:00 pm on February 17, 2018, Erica Findley and Kelli Haynes were walking next to the railroad tracks that runs parallel to East 5th Street in Austin. Haynes testified by affidavit that they were walking on the gravel basalt next to the track because there was no

sidewalk. "Very loud" music from a nearby bar covered the sound of a diesel-power train approaching behind them. A panel protruding from the train struck Findley, who later died of her injuries.

Appellees sued the City of Austin d/b/A Austin Energy (City), among others, over Findley's death. They alleged that the City "was negligent in the operation and maintenance of a public utility—Austin Energy" because it "negligently operated and maintained the lighting on East 5th Street."[1] More specifically, they alleged that the City failed to adequately illuminate the area, causing Findley and Haynes "to walk in the dark" along the train tracks. They sought to overcome the City's immunity through a premises defect action under Section 101.021 of the Tort Claims Act (TTCA), which waives immunity for claims arising from "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(2). As an alternative, appellees alleged that the City is not immune because their claims arose out of the City's performance of a proprietary rather than a governmental function.

The City filed a plea to the jurisdiction based on governmental immunity, and appellees filed a response. Appellees attached evidence to their response, including: (1) an affidavit from Haynes, (2) an affidavit from the driver of the train, (3) a transcript of the deposition of Austin Energy employee Obaid Rehmen; (4) an engineer's diagram from Austin

---

[1] Appellees originally asserted claims against the "City of Austin" and the "City of Austin d/b/a Austin Energy" separately. The City argued in its plea to the jurisdiction that Austin Energy had no separate existence. *See City of Austin v. MET Ctr. NYCTEX, Phase II, Ltd.*, No. 03-11-00662-CV, 2014 WL 538697, at *1 (Tex. App.—Austin Feb. 6, 2014, pet. dism'd) (mem. op.) ("Austin Energy is the name under which the City provides electric utility services to its customers."). Appellees' live petition now makes no distinction between the two named parties.

Energy depicting the lightning in the area, and (5) Austin Energy's Illumination Guidelines. Appellees filed several amended pleadings, each time accompanied by an amended response to the City's jurisdictional plea. Appellees' fourth amended petition, their live petition, omitted the premises-defect theory and argued solely that the City is not immune because it was performing a proprietary function. The district court signed an order overruling the plea, and this appeal ensued.

**LEGAL STANDARDS**

"Sovereign immunity protects the State of Texas and its agencies from suit and liability, whereas governmental immunity provides similar protections to the State's political subdivisions." *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019). An assertion of governmental immunity implicates a court's subject-matter jurisdiction and may therefore be asserted in a plea to the jurisdiction. *Id.* at 345. We review the trial court's disposition of a plea to the jurisdiction de novo. *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 664 (Tex. 2019).

A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Texas Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). If the plea challenges the pleadings, "we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). In determining whether the plaintiff has met that burden, we liberally construe the pleadings, take all factual assertions as true, and look the pleader's intent. *Id.* When a plea challenges the existence of jurisdictional facts, the standard of review mirrors that of a traditional summary judgment: "all the evidence is

reviewed in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). If the evidence creates a fact question, the trial court must deny the plea, and the fact issue will be resolved by the fact finder. *Johnson*, 572 S.W.3d at 664 (citing *Miranda*, 133 S.W.3d at 227–228). However, if the evidence "is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.*

## ANALYSIS

The supreme court prescribes "a relatively simple two-step process for addressing the applicability of immunity." *Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 703 (Tex. 2019) (citing *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 435 (Tex. 2016) [*Wasson I*])). First, we "determine[ ] the applicability of immunity in the first instance," which is "a job solely for the judiciary." *Id.* If immunity exists, "we look to statutory law to determine whether the Legislature has waived it." *Id.*

The City argues in its first issue that immunity is applicable because appellees' claims arise from the City's performance of a governmental function. Municipalities "can exercise their broad powers in two different capacities: proprietary and governmental." *Rosenberg Dev. Corp.*, 571 S.W.3d at 746 (citing *Gates v. City of Dallas*, 704 S.W.2d 737, 738 (Tex. 1986)). Governmental immunity protects municipalities "when performing governmental functions as the state's agent." *Id.* However, consistent with the principal that "a municipality's immunity extends only as far as the state's but no further," *Wasson I*, 489 S.W.3d at 430, "no immunity exists" for a municipality's proprietary acts, *Rosenberg Dev. Corp.*, 571 S.W.3d at 746–47; *see Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006) ("A municipality is not

4

immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions.").

The governmental/proprietary distinction arose from the common law, but the Constitution authorizes the Legislature to define which municipal functions are considered governmental and which are proprietary. *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 147 (Tex. 2018) [*Wasson II*] (citing Tex. Const. art. XI, § 13). Exercising that authority, the Legislature has defined governmental and proprietary functions in the TTCA "for the purposes of determining whether immunity applies to tort claims against a municipality." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 101.0215). The TTCA generally defines governmental functions as "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." *Id.* § 101.0215(a). Section 101.0215 enumerates thirty-six governmental functions including, as relevant here, "street construction and design," and "regulation of traffic." *Id.* § 101.0215(a)(3), (21). Conversely, proprietary functions are "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." *Id.* § 101.0215(b). The TTCA provides a list of proprietary functions that includes, as relevant here, "the operation and maintenance of a public utility." *Id.* § 101.0215(b)(1). Although the list of proprietary functions is non-exclusive, proprietary functions "do not include" any of the enumerated governmental functions. *Id.* § 101.0215(c); *Wasson II*, 559 S.W.3d at 147.

In determining whether a function is governmental or proprietary, we look to the factual allegations underlying the claims. *See University of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 513 (Tex. 2019) (courts look to "true nature of the dispute"); *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 389 (Tex. 2011) (courts look to

5

"'real substance" of the plaintiff's claims" in determining jurisdiction). Appellees' claims arise from the City's decisions regarding how many streetlights to install, what type of light fixture to employ, and the spacing of the lights. The City argues that its provision of street lighting is governmental because it is closely related to certain governmental functions. Appellees respond that their claims arise from the City's operation of a public utility and that a proprietary function does not become governmental merely because it "touches upon" a governmental function. *See Wasson II*, 559 S.W.3d at 153 ("The fact that a city's proprietary action 'touches upon' a governmental function is insufficient to render the proprietary action governmental.").

We agree with the City. Governmental functions "encompass activities that are closely related to or necessary for performance of the governmental activities designated by statute." *Rogers v. City of Houston*, 627 S.W.3d 777, 795 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citing *City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 356 (Tex. App.—Houston [14th Dist.] 2008, no pet.)). For example, we held in *City of Elgin v. Reagan* that allowing members of the public to adopt animals from a city-run shelter was "so closely related" to the enumerated governmental function of animal control as to be governmental. No. 03-06-00504-CV, 2009 WL 483344, at *3 (Tex. App.—Austin Feb. 26, 2009, no pet.) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code § 101.0215(a)(33)). The Fourteenth Court of Appeals has held that operation of an airport shuttle service was closely related to the performance of three activities the TTCA enumerates as governmental: airports, traffic regulation, and transportation systems. *Ethio Exp. Shuttle Serv., Inc. v. City of Houston*, 164 S.W.3d 751, 756 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 101.0215(a)(10), (21), (22)). The City contends that street lighting design is a necessary part of street design and traffic regulation. *See* Tex. Civ. Prac. & Rem. Code

6

§ 101.0215(a)(3), (21) (enumerating "street construction and design" and "regulation of traffic" as governmental functions). Appellees argue there is at least a fact issue regarding whether these functions are proprietary because the City performs them in the context of providing utility services. However, the evidence before the court, including Rehman's deposition and the Illumination Guidelines, establish that the provision of street lighting is closely related to street design and traffic regulation.[2]

Appellees rely heavily on Rehman's testimony that Austin Energy's design and maintenance of street lighting has "nothing to do" with activities that appellees believe fall under street design or traffic regulation: "pouring the pavement, painting lanes on the pavement," and erecting traffic signals and stop signs. But Rehman explained that the City provides street lighting to aid drivers in using the street. Austin Energy does "not do pedestrian[] lighting" and "has no responsibility" to adequately illuminate sidewalks, train tracks, or other areas. He explained that Austin Energy determines how many lights to install, the spacing of the lights, and whether the illumination level is adequate by looking to the needs of drivers using the road.

The Illumination Guidelines reinforce the connection between the provision of street lighting and street design and traffic regulation. Streetlights "face the roadway" and are "intended to (1) light roadway features such as edge of pavement, intersections, sharp curves, deadends; (2) light obstruction such as median strips and bridge piers; and (3) provide pedestrian

---

[2] The City argues that the supreme court has already held that the provision of street lighting is a governmental function. *See County of Cameron v. Brown*, 80 S.W.3d 549 (Tex. 2002) and *City of Austin v. Silverman*, No. 03-06-00676-CV, 2009 WL 1423956 (Tex. App.— Austin May 21, 2009, pet. denied) (mem. op.). While both disputes involved tort claims arising, at least in part, over absent or insufficient lighting, neither considered whether the provision of lighting was a governmental function entitled to immunity in the first instance. Instead, the issue in each case was whether the TTCA waived applicable immunity. *See Brown*, 80 S.W.3d at 557 (considering whether discretionary-functions exemption to TTCA's waiver applied); *Silverman*, 2009 WL 1423956, at *2 (same).

7

safety." The Guidelines lay out general considerations for lighting design that focus on the drivers. Specifically, street lighting must be sufficient for drivers to perform a "myriad of tasks" in addition to driving, including "seeing pedestrians" and "dropping off passengers." The Guidelines include more specific directions for illuminating pedestrians at various locations, but the focus is always so that the driver can use the road as designed. For example, consideration of the amount of pedestrian traffic at intersections is particularly important because the "more pedestrian traffic, the more light is needed for drivers to see them." Crosswalks at roundabouts should be "lit with the pedestrians in positive contrast" to provide the drivers with "good pedestrian recognition."

Rehman's testimony and the Guidelines strongly support that the City acts in a governmental capacity when it provides street lighting. Appellees respond that we cannot ignore that the City performs this activity in the context of operating a public utility.[3] *See City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, 830 (Tex. App.—Austin 2014, no pet.) ("The determination of whether an activity is proprietary or governmental must include consideration of the context within which the conduct occurred."). They analogize this case to *Liberty Mutual*, where this Court rejected the City's assertion of immunity over claims arising from its operation

---

[3] Appellees invite us to analyze whether lighting design is governmental or proprietary based on the *Wasson* factors. *See Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 150–54 (Tex. 2018) (instructing courts to consider whether a city's acts: (1) were mandatory or discretionary, (2) involved public or resident benefits, (3) were taken on the State's behalf or the City's, (4) were related to a governmental function). The City responds that it is "doubtful" whether the *Wasson* factors apply here. The *Wasson* factors apply, if at all, when the TTCA does not enumerate an activity as governmental or proprietary. *See, e.g.*, *Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 704–05 (Tex. 2019) (citing *Wasson II*, 559 S.W.3d at 150). Our conclusion that the City was engaged in enumerated governmental functions when providing street lighting makes that analysis unnecessary. *See Town of Highland Park v. McCullers*, No. 05-19-01431-CV, ___ S.W.3d ___, ___, 2021 WL 2766390, at *10 n.20 (Tex. App.—Dallas June 29, 2021, no pet.) (declining to consider *Wasson II* factors for same reason).

of Austin Energy. In that case, a group of plaintiffs sued the City for damages caused by a wildfire that allegedly started when Austin Energy's "overhead distribution lines came in contact with each other during high winds, causing electrical arcing, which in turn caused 'molten metal globules' to fall to the ground and ignite dry vegetation." *Id.* at 821. The City argued in part that the activities that allegedly caused the damage were part of the City's provision of "engineering services," a governmental function under the TTCA. *Id.* at 823. This Court disagreed, reasoning that accepting the City's argument would undermine the legislature's classification of operating and maintaining a public utility as proprietary because "[v]irtually every aspect of the operation and maintenance of a public utility involves" engineering services. *Id.* at 829. In other words, that operating a public utility involved engineering services did not change the fundamental nature of the City's acts. *Id.* at 830. Appellees argue that it is the same here because their claims arise from the City's negligence in operating and maintaining its "electrical distribution system including power lines, utility poles, and lights attached thereto."

We disagree. The plaintiffs in *Liberty Mutual* alleged the City was negligent in maintaining the actual electrical distribution system. Specifically, they alleged the fire started because of the following series of events:

> (1) the City affirmatively decided, as a cost-saving measure, to discontinue inspections of its overhead power lines; (2) as a result of this decision, the relevant power lines eventually lost tension, which allowed for excessive slack in one or more of the lines; (3) the power lines became sufficiently slack that, under conditions such as high winds, they could come in contact with each other; (4) circumstances arose, specifically high winds, that did in fact cause the lines to come in contact with each other; (5) the contact of the lines caused electrical arcing that created molten metal globules to form on the lines; [and] (6) the molten metal globules fell from the line onto dry vegetation, which ignited . . . .

9

*Id.* at 825. Appellees here have not alleged that they were injured by the City's maintenance or operation of utility poles or power lines, nor have they alleged that the City's decisions regarding street lighting in the area were driven by related concerns. As set out above, the City designed the streetlights to provide adequate illumination for drivers to navigate the road safely, which is closely related to the performance of two government functions. The fact that Austin Energy mounted some of the streetlights on utility poles does not change the essential character of that activity. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(c); *City of San Antonio by & through City Pub. Serv. Bd. of San Antonio v. Smith*, 562 S.W.3d 75, 80 (Tex. App.—San Antonio 2018, pet. denied) ("However, the fact that CPS Energy primarily functions as a public utility does not prevent it from performing activities that are governmental in nature.").

Reviewing all the evidence in the light most favorable to the plaintiffs, we conclude that it conclusively demonstrates that the City's provision of street lighting is closely related to or necessary for performance of at least two governmental activities: street design and traffic regulation. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(a)(3), (21). Under these facts, we therefore conclude that the City is entitled to governmental immunity. We sustain the City's first issue.

The City argues in its second issue that appellees failed to plead a waiver of the City's immunity under the TTCA. See *Texley Inc. v. Hegar*, 613 S.W.3d 322, 326 (Tex. App.—Austin 2020, no pet.) ("When a governmental entity challenges jurisdiction on immunity grounds, the plaintiff 'must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity.'" (quoting *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam)). Because appellees do not disagree, we do not address this issue. See Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief

as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## CONCLUSION

We reverse the district court's denial of the plea to the jurisdiction and render dismissing appellees' claims against the City for want of jurisdiction.

_____

Edward Smith, Justice

Before Justices Goodwin, Baker, and Smith

Reversed and Rendered

Filed:   April 21, 2022