

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00138-CV

**SAN ANTONIO WATER SYSTEM**, an Agency of the City of San Antonio,
Appellant

v.

**MATIRAAN, LTD.**, and Marylyn House,
Appellees

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2020-CI-08486
Honorable Laura Salinas, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Irene Rios, Justice
                Beth Watkins, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: March 1, 2023

REVERSED AND REMANDED WITH INSTRUCTIONS

The San Antonio Water System ("SAWS") appeals the trial court's denial of SAWS's plea

to the jurisdiction asserting governmental immunity. We reverse the judgment of the trial court

and remand this cause to the trial court with instructions to render a judgment of dismissal in favor

of SAWS and to determine any relief to which SAWS may show itself justly entitled, including

attorneys' fees and costs.

## BACKGROUND

This case involves a Deed of Conservation Easement (the "Easement") implicating three tracts of land. Two of the tracts were combined in what is referred to as the "Restricted Property," and the other tract is the "Development Property." It also involves three parties: the Easement's grantor, Harcourt, Inc. ("Harcourt"), and SAWS.

In 2000, the grantor owned all three tracts. Harcourt intended to develop the Development Property as its corporate headquarters. At the time the Development Property was located in the extraterritorial jurisdiction of the City of San Antonio, subjecting the Development Property to a 15 percent limit for "impervious cover." As a practical matter, the 15 percent impervious cover restrictions rendered the Development Property incapable of being developed as Harcourt's corporate headquarters.

San Antonio's impervious cover restrictions exist to protect the recharge of the Edwards Aquifer.[1] The Easement combined the Development Property and the Restricted Property as a means of resolving the impervious cover restrictions. For purposes of calculating impervious cover, the plan required additional restrictions to be placed on the Restricted Property so that the purpose of the restrictions remained fulfilled after development of the Development Property. To satisfy this plan, the Easement granted to SAWS a conservation easement over the Restricted Property. The four corners of the Easement confirm its purpose; in relevant part:

- "[T]he Development Property and the Restricted Property are located over the Edwards Recharge Zone and are presently classified as Category 3 property pursuant to Section 34-925 of the City Code of San Antonio, Texas (the 'City Code') which restricts or limits

---

[1] *See, e.g.*, SAN ANTONIO CODE OF ORDINANCES §§ 34-901 (adopting aquifer recharge zone and watershed protection policies to "maintain[] or improve[] the quality of water entering the Edwards Aquifer"), 34-902 (delegating administration to SAWS), 34-908 (defining "impervious cover"), 34-925 (classifying extraterritorial projects within the Edwards Aquifer Recharge Zone, such as the one at issue here, as "Category 3"), 34-935 (restricting impervious cover to 15 percent for Category 3 properties).

'impervious cover' (as defined in City Code Section 34-908) on said properties to 15% of the surface area";

- "Grantor intends to promote the development of the Development Property by Harcourt by prohibiting the construction of impervious cover on the Restricted Property";

- "[T]he Development Property possesses development value of great importance to the Grantor, the people of Bexar County and the people of the State of Texas";

- "[T]he Restricted Property also possesses value of great importance for the protection and recharge of the Edwards Aquifer to Grantor, the people of Bexar County and the people of the State of Texas";

- "Grantor intends that the recharge value of the Restricted Property be preserved and maintained by permitting only those uses on the Restricted Property that do not significantly impair or interfere with it";

- "Grantor further intends, as owner of the Restricted Property, to convey to SAWS and to Harcourt the right to preserve and protect the recharge value of the Restricted Property and the Development Value of the Development Property in perpetuity, subject to the terms hereof";

- "Grantor hereby voluntarily grants and conveys to SAWS and to Harcourt a conservation easement in perpetuity over the Restricted Property of the nature and character and to the extent hereinafter set forth ('Easement')";

- "1. **Purpose.** It is the purpose of this Easement to assure that the Restricted Property will be retained forever in its natural, scenic and open space condition and to prevent any use of the Restricted Property that will adversely impair or interfere with the recharge of the Edwards Aquifer. Grantor intends that this Easement will confine the use of the Restricted Property to such activities as are not inconsistent with the purpose of this Easement. It is also the purpose of this Easement to facilitate the development of the Development Property by Harcourt by insuring [sic] that the Development Property complies with the impervious cover requirement of Chapter 34 of the City Code. Grantor intends that this Easement will prevent the construction or installation of any impervious cover on the Restricted Property other than as allowed under the terms of this instrument. Grantor further intends that the Restricted Property shall be deemed to be part of the same lot, tract or parcel within the total site being developed or development for purposes of determining the percent impervious cover allowed on the combined Development Property and Restricted Property under the City Code.";

- "2. **Rights of SAWS.** To accomplish the purposes of this Easement, the following rights are conveyed to SAWS by this Easement: (a) To preserve and protect the natural state of the Restricted Property and promote the beneficial recharge of the Edwards Aquifer . . .";

- "4. **Prohibited Uses.** Any activity on or use of the Restricted Property inconsistent with the purpose of this Easement is prohibited. . . ."

The contracting parties executed the Easement in February 2000. On January 1, 2021, San Antonio annexed both the Development Property and the Restricted Property. San Antonio's annexation re-classified the properties from Category 3 to Category 2, significantly relaxing the impervious cover limitation from 15 percent to 65 percent. In 2012 and 2014, appellee Matiraan, Ltd. ("Matiraan") acquired property burdened by the Easement (the "Matiraan Property") using a loan provided by appellee Marylyn House. Appellees assert they had no knowledge of the Easement prior to the acquisitions and were unaware the Matiraan Property was burdened by the Easement. Additionally, appellees assert the annexation and re-classification "caused the object and purpose of the [Easement] to wholly fail."

In 2015, Matiraan sought to re-zone portions of the Matiraan Property to allow for quarrying. San Antonio refused the zoning application based on the existence of the Easement. Appellees subsequently filed a petition to terminate the Easement. Pertinent to this appeal, the trial court permitted jurisdictional discovery and, after an evidentiary hearing, denied SAWS's plea to the jurisdiction. This appeal followed.

### STANDARD OF REVIEW

To establish subject matter jurisdiction, a plaintiff must allege facts that affirmatively demonstrate the court's jurisdiction to hear the claim. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). A plaintiff also bears the burden of establishing a waiver of governmental immunity in suits against the government. *Id.* A party may contest a trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *Id.* at 160; *County of Bexar v. Steward*, 139 S.W.3d 354, 357 (Tex. App.—San Antonio 2004, no pet.).

Our de novo review looks to the pleader's intent and construes the pleadings in its favor. *Houston Belt*, 487 S.W.3d at 160. However, we are "not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Shady Shores*, 590 S.W.3d at 550 (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). When a plea to the jurisdiction challenges the existence of jurisdictional facts with supporting evidence, the standard of review mirrors that of a traditional summary judgment: all the evidence is reviewed in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists. *Id.* (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004)).

## GOVERNMENTAL IMMUNITY

### *Waiver of Immunity*

The parties agree that no statutory waiver of immunity applies here. Instead, the parties' arguments center on whether immunity exists at all. *See Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 451–52 (Tex. 2016) (parties must only establish waiver of immunity if immunity applies). Because waiver is not implicated here, the issue before us is whether SAWS entered the Easement in its proprietary or governmental capacity. *See Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 148 (Tex. 2018) (hereinafter "*Wasson II*").

### *The Governmental/Proprietary Dichotomy*

Municipal corporations exercise their broad powers through two different roles: proprietary and governmental. *Wasson II*, 559 S.W.3d at 146. The governmental/proprietary dichotomy recognizes that immunity protects a governmental unit from suits based on its performance of a governmental function but not a proprietary function. *Id.* "Unlike governmental functions, for which municipal corporations have traditionally been afforded some degree of governmental

immunity, proprietary functions have subjected municipal corporations to the same duties and liabilities as those incurred by private persons and corporations." *Id.*

Municipalities share in the State's sovereign immunity when they act as a branch of the State but not when they act in a proprietary, non-governmental capacity. *Id.* Whether a municipality enjoys immunity from suit thus depends on the relationship, or lack thereof, between the municipality and the state, not the relationship between the municipality and the party bringing suit. *Id.*

"[D]etermining which functions are proprietary and which are governmental is not always a cut-and-dried task." *Id.* at 147 (quoting *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 438 (Tex. 2016) (hereinafter *Wasson I*)). Generally, governmental functions consist of a municipality's activities in the performance of purely governmental matters solely for the public benefit. *Id.* Acts done as a branch of the state are protected by immunity. *Wasson I*, 489 S.W.3d at 433.

Proprietary functions, by contrast, are those performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality, and not as an arm of the government. *Wasson II*, 559 S.W.3d at 147. These are usually activities that can be, and often are, provided by private persons. *Id.* Acts that are proprietary in nature, therefore, are not done as a branch of the state, and thus do not implicate the state's immunity for the simple reason that they are not performed under the authority, or for the benefit, of the sovereign. *Wasson I*, 489 S.W.3d 427.

In the context of contract claims, we determine whether governmental immunity applies to a municipality by assessing whether the municipality was engaged in a governmental or proprietary function at the time it entered the contract. *Wasson II*, 559 S.W.3d at 149. Our focus

belongs on the nature of the contract, not the nature of the municipality's subsequent conduct. *See id.*

Our analysis is guided by the four *Wasson* factors:[2] (1) whether SAWS's act of entering into the Easement was mandatory or discretionary; (2) whether the Easement was intended to benefit the general public or only those within SAWS's corporate limits; (3) whether SAWS was acting on the State's behalf or its own behalf when it entered the Easement; and (4) whether SAWS's act of entering into the Easement was sufficiently related to a governmental function to render the act governmental even if it would otherwise have been proprietary. *Id.* When some factors point to one result while others point to the opposite result, we consider immunity's nature and purpose and the derivative nature of a city's access to that protection. *Id.* at 154; *see Hays St. Bridge*, 570 S.W.3d at 705.

***Mandatory or Discretionary***

SAWS concedes its entry into the Easement was discretionary. Accordingly, the first factor weighs in favor of concluding SAWS's entry into the Easement was a proprietary act. *See Wasson II*, 559 S.W.3d at 150–51.

---

[2] SAWS asserts we need not perform a *Wasson* analysis because SAWS entered into the Easement in connection with one of the enumerated governmental activities in the Texas Tort Claims Act ("TTCA"). *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(11), (19), (32) ("waterworks," "reservoirs," and "water and sewer service"). According to SAWS, the classification of SAWS's entry into the Easement as falling under any one of these categories is dispositive. We disagree. In the context of contract claims, TTCA-enumerated functions are not dispositive; instead, they are considered under the fourth *Wasson* factor. *See Wasson II*, 559 S.W.3d at 153 (analyzing TTCA-enumerated functions as part of fourth factor); *see also Hays St. Bridge Restoration Group v. City of San Antonio*, 570 S.W.3d 697, 705 n.46 (Tex. 2019) ("[W]e consider the Legislature's classification of governmental and proprietary functions in the Tort Claims Act to be guidance in the contract-claims context—rather than binding lists to be interpreted narrowly . . ."); *but see Hunnicutt v. City of Webster*, 641 S.W.3d 584, 591–92 (Tex. App.—Houston [14th Dist.] 2022, no pet.) ("If a function has been designated by the legislature as one given to the municipality by the state as part of the state's sovereignty, we have no discretion to determine that it is proprietary."). We therefore consider the TTCA-enumerated functions as part of the fourth *Wasson* factor.

*Public or Resident Benefits*

Generally, governmental functions benefit the general public and proprietary functions benefit a municipality's own residents. *Id.* at 151 (citing TEX. CIV. PRAC. & REM. CODE § 101.0215(a)). Under the second factor, we assess whether SAWS's entry into the Easement *primarily* benefits the public or residents of the municipality. *See id.*

According to SAWS, the Easement was intended to primarily benefit the general public—not just residents of San Antonio. In support of this argument, SAWS points to the importance of the conservation of the Edwards Aquifer. "The Edwards Aquifer is an underground layer of porous, water-bearing rock, 300–700 feet thick, and five to forty miles wide at the surface, that stretches in an arced curve from Brackettville, 120 miles west of San Antonio, to Austin. It is the primary source of water for south central Texas and therefore vital to the residents, industry, and ecology of the region, the State's economy, and the public welfare." *Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 394 (Tex. 2009); *see also Edwards Aquifer Auth. v. Day*, 369 S.W.3d 814, 818 (Tex. 2012).

According to appellees, the Easement was primarily entered into to facilitate Harcourt's private development of the Development Property. In support of this, appellees offered into evidence testimony by witnesses involved in the transaction culminating in the creation of the Easement. Appellees assert this testimony, being uncontroverted, is conclusive in proving the Easement primarily benefitted private development. However, we cannot consider extrinsic evidence in determining the intent of the Easement.[3] *See Shady Shores*, 590 S.W.3d at 550 (standard of review mirrors traditional summary judgment standard); *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 483 (Tex. 2019) ("The parol evidence rule bars

---

[3] For this reason, we also reject appellees' contention that fact issues arising from this testimony precludes granting SAWS's plea to the jurisdiction.

consideration of evidence that contradicts, varies, or adds to the terms of an unambiguous written agreement. Evidence of prior or contemporaneous agreements is inadmissible as parol evidence when the contract is unambiguous. . . . Here, evidence of the parties' substantive negotiations directly relates to the creation of the parties' unambiguous agreement. Therefore, the parol evidence rule bars consideration of evidence of the parties' substantive negotiations . . .") (internal citations omitted); *see also Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (Tex. 1958) ("The parol evidence rule is not a rule of evidence at all, but a rule of substantive law."). Moreover, as SAWS correctly points out, the testimony is controverted by the language of the Easement itself.

The language of the Easement—quoted at length above—clearly establishes SAWS's primary motivation for the conservation easement proper (i.e., the grant to SAWS) is to benefit the general public. For example, the section entitled "Purpose" begins, "It is the purpose of this Easement to assure that the Restricted Property will be retained forever in its natural, scenic and open space condition and to prevent any use of the Restricted Property that will adversely impair or interfere with the recharge of the Edwards Aquifer." That section notes that it is "also" the purpose to facilitate development of the Development Property. Reading the Easement in its totality, we cannot say SAWS's primary purpose was development of the Development Property. *See Hays St. Bridge*, 570 S.W.3d at 706 (determining restoration of a bridge primarily benefitted the general public based on two words—"for the enjoyment and education of San Antonio residents *and visitors*.") (emphasis in original).

Moreover, the Easement by its own terms conferred different rights to SAWS and Harcourt in two separate sections entitled "Rights of SAWS" and "Rights of Harcourt." The rights "conveyed to SAWS by this Easement"—the rights properly at issue in this lawsuit—were clearly and expressly spelled out as rights benefitting the general public: "To preserve and protect the natural state of the Restricted Property and promote the beneficial recharge of the Edwards

Aquifer." According to the Easement, the Restricted Property "possesses value of great importance for the protection and recharge of the Edwards Aquifer to Grantor, *the people of Bexar County and the people of the State of Texas*" (emphasis added).

In weighing this factor, we also cannot lose sight of the reason behind San Antonio's impervious cover limitation: To protect the recharge of the Edwards Aquifer. *See Wasson II*, 559 S.W.3d at 154 ("[C]ourts should consider immunity's nature and purpose and the derivative nature of a city's access to that protection."); SAN ANTONIO CODE OF ORDINANCES §§ 34-901 (adopting aquifer recharge zone and watershed protection policies to "maintain[] or improve[] the quality of water entering the Edwards Aquifer"), 34-902 (delegating administration to SAWS), 34-908 (defining "impervious cover"), 34-925 (classifying extraterritorial projects within the Edwards Aquifer Recharge Zone, such as the one at issue here, as "Category 3"), 34-935 (restricting impervious cover to 15 percent for Category 3 properties). San Antonio's regulation of impervious cover exists for the benefit of the public at large. In other words, the then-existing restrictions prohibiting Harcourt's development absent the Easement are restrictions that existed for the benefit of the public.

We hold SAWS's primary purpose in entering into the Easement was to benefit the general public. Accordingly, the second factor weighs in favor of concluding SAWS's entry into the Easement was a governmental act. *See Wasson II*, 559 S.W.3d at 150–51.

### State's or City's Behalf

Governmental functions are those in which a city acts as a "branch of the state" or an "arm of the government" rather than on its own behalf. *Id.* at 152. Unlike the residential leases at issue in *Wasson*, the Easement does not confer any collateral benefit (such as rent) to SAWS. Instead, SAWS was only granted a conservation easement and rights necessary to enforce the same. Given

the importance of the Edwards Aquifer to the State,[4] San Antonio's legislative determinations regarding regulation of Edwards Aquifer recharge,[5] and the language of the Easement, we hold SAWS acted as an arm of the government in entering the Easement. Accordingly, the third factor weighs in favor of concluding SAWS's entry into the Easement was a governmental act. *See Wasson II*, 559 S.W.3d at 150–51.

### *Relation to a Governmental Function*

Finally, we consider the extent to which SAWS's decision to enter into the Easement was related to its governmental functions. *Id.* at 152. SAWS asserts entry into the Easement was related to at least three governmental functions specifically enumerated in the TTCA: "waterworks," "reservoirs," and "water and sewer service." TEX. CIV. PRAC. & REM. CODE § 101.0215(11), (19), (32).

Relying again on extrinsic evidence, appellees assert the true purpose of the Easement was Harcourt's development of the Development Tract. Although we again reject appellees' invitation to consider parol evidence, we acknowledge the four corners of the Easement undoubtedly acknowledge Harcourt's purpose was development of the Development Tract in circumvention of San Antonio's 15 percent impervious cover limitation—a limitation we have explained was imposed to protect recharge of the Edwards Aquifer. However, our concern in weighing this factor is not Harcourt's purpose for entering into the Easement; it is SAWS's purpose.

---

[4] *Day*, 369 S.W.3d at 818; *Chem. Lime,* 291 S.W.3d at 394.

[5] SAN ANTONIO CODE OF ORDINANCES §§ 34-901 ("The City of San Antonio adopts a goal of nondegradation which maintains or improves the quality of water entering the Edwards Aquifer. . . . The City of San Antonio hereby adopts this policy of nondegradation to insure the preservation of a clean and safe drinking water supply, and has found, as a matter of legislative determination, that the implementation of the regulations contained in this Division will significantly move toward accomplishing this goal.").

We agree with SAWS that SAWS's entry into the Easement was plainly related to at least one TTCA-enumerated governmental function: reservoirs.[6] The Edwards Aquifer is an underground reservoir of water. *See* TEX. WATER CODE § 36.001(6), (24) (defining "groundwater reservoir" and "total aquifer storage" relating to such reservoirs); EDWARDS AQUIFER AUTHORITY ACT § 1.04 (describing area of Edwards Aquifer by reference to "Underground Water Reservoir"); *Day*, 369 S.W.3d at 840 (employing the term "subsurface reservoir" in reference to Edwards Aquifer).

In weighing this factor, we agree with SAWS that because conservation and protection of the Edwards Aquifer—a reservoir—is a key component of SAWS's provision of water service, SAWS's entry into the conservation easement was related to a governmental function. The language of the Easement unmistakably evidences the same. Accordingly, the fourth factor weighs in favor of concluding SAWS's entry into the Easement was a governmental act. *See Wasson II*, 559 S.W.3d at 150–51.

## CONCLUSION

Weighing the *Wasson* factors and considering immunity's nature and purpose and the derivative nature of SAWS's access to that protection, we conclude SAWS's entry into the Easement was a governmental act for which SAWS is cloaked in immunity absent a waiver of such immunity. Appellees do not assert waiver of immunity. We accordingly reverse the trial court's order denying SAWS's plea; however, we note that SAWS requests attorneys' fees and costs under the Uniform Declaratory Judgments Act. TEX. CIV. PRAC. & REM. CODE § 37.009; *see also Feldman v. KPMG LLP*, 438 S.W.3d 678, 685–86 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (trial court can award attorneys' fees under UDJA following dismissal of declaratory

---

[6] We express no opinion on the other two TTCA-enumerated functions identified by SAWS, "waterworks" and "water and sewer service."

judgment claim for lack of jurisdiction). Therefore, we remand this cause to the trial court with instructions to render a judgment of dismissal in favor of SAWS and to determine any relief to which SAWS may show itself justly entitled, including attorneys' fees and costs. *See City of San Antonio by & through San Antonio Water Sys. v. Campbellton Rd., Ltd.*, 647 S.W.3d 751, 764 (Tex. App.—San Antonio 2022, pet. filed).

Lori I. Valenzuela, Justice