

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00393-CV

THE CITY OF LUBBOCK, TEXAS, APPELLANT

V.

J.P.M., INC. D/B/A TACO BELL #036565, APPELLEE

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. DC-2023-CV-0538, Honorable J. Phillip Hays, Presiding

May 19, 2026

MEMORANDUM OPINION

Before DOSS and YARBROUGH and PRATT, JJ.

The City of Lubbock appeals from the trial court's order denying its dispositive motions. It challenges the ruling below through several issues.[1] We reverse the trial court's order and render judgment dismissing Taco Bell's claims for lack of jurisdiction.[2]

---

[1] Given our disposition herein, we address three of the four issues raised. We do not reach the City's fourth issue.

[2] Taco Bell filed a motion to strike and objections to the City's reply brief and appendix. We hereby deny the motion. With limited exceptions that are not relevant here, an appellate court may not consider matters outside the appellate record and that were not presented to the trial court. *Crossley v. Staley*, 988

This appeal arises from the underlying suit initiated by J.P.M., Inc. d/b/a Taco Bell #036565 ("Taco Bell") against the City for negligence when City employees cut an electrical line providing power to the restaurant. This occurred when City employees were trying to locate and repair a ruptured and leaking sewer line.

The electrical line at issue was installed in 2019 by contractors of Taco Bell. The line was placed through a transformer box that was in a 20-foot public utility easement that runs through the easternmost portion of Taco Bell's property. Several other electrical, water, and gas lines were also placed in the easement. The contractor for Taco Bell registered the line after installation. In 2020, Lubbock Power & Light (LP&L), a municipal utility owned by the City of Lubbock, energized the line following an inspection and Taco Bell opened to the public.

In May 2022, the City received a call about a cracked and blocked sewer line that led to a storage unit near the Taco Bell location. Raw sewage was reportedly backing up into the storage units. After receiving the call, the City notified "DigTest"/Texas811/811 as required under the Texas Utilities Code. The City made an emergency request, asking that any underground lines in the area be marked. Utility crews responded and marked underground lines later that day. The following day, the City's crew foreman observed the area had been marked with paint and flags. He stated that red markings indicated

---

S.W.2d 791, 794 (Tex. App.—Amarillo 1999, no pet.); *O'Keefe v. Phelan*, No. 14-00-01194-CV, 2001 Tex. App. LEXIS 2591, at *5–6 (Tex. App.—Houston [14th Dist.] Apr. 19, 2001, no pet.) (mem. op.).

2

electrical lines and yellow marks indicated gas lines. The electrical line at issue in this case was not marked.

The City used a backhoe to dig to find the blockage in the sewer line. The excavation was performed in a grassy area with no flags, indicating there should have been no electrical or gas lines present. While digging, the crew observed the area and employed techniques (including "punching" or "potholing") to avoid any unmarked lines or other objects. Despite these precautions, the crew struck Taco Bell's electrical line. This caused a power outage and Taco Bell had to pay expenses to repair the line and to restore power to the restaurant. Taco Bell subsequently sued the City for negligence under common law and under the Texas Tort Claims Act ("TTCA"), alleging damages to its property requiring repairs and loss of business income for the period it was without electrical service.

The City filed motions for summary judgment and a plea to the jurisdiction. The trial court denied those motions in November 2025.

## ANALYSIS

### STANDARD OF REVIEW

The City filed both motions for summary judgment and a plea to the jurisdiction below. The subject-matter jurisdiction of a trial court may be challenged by a party's plea to the jurisdiction. *Davis v. City of Lubbock*, No. 07-16-00080-CV, 2018 Tex. App. LEXIS 1034, at *4–5 (Tex. App.—Amarillo Feb. 6, 2018, no pet.) (mem. op.) (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam)). We engage in a de novo review of the ruling of a trial court on a plea to the jurisdiction as the existence of

3

jurisdiction is a question of law. *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 156 (Tex. 2007).

Review of the trial court's ruling on a plea to the jurisdiction starts with the live pleadings. *Davis*, 2018 Tex. App. LEXIS 1034, at *4. A plaintiff is required to affirmatively demonstrate the trial court's jurisdiction. *Id.* "When a plea to the jurisdiction challenges the existence of facts alleged by the pleader to establish the trial court's subject-matter jurisdiction, the trial court must consider relevant evidence submitted by the parties." *Id.* at *6. This standard generally reflects that applicable to a traditional motion for summary judgment. *Id.* (citing Tex. R. Civ. P. 166a(c)). *See Seward v. Santander*, 713 S.W.3d 341, 353 (Tex. 2025); *see also Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2000); *City of Galveston v. Murphy*, 533 S.W.3d 355, 359 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (when a plea to the jurisdiction implicates the merits of the case, appellate review mirrors that of a summary judgment). Therefore, the trial court may consider affidavits and other summary judgment-type evidence. *Davis*, 2018 Tex. App. LEXIS 1034, at *6 (citing *FKM P'ship v. Board of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 628 (Tex. 2008)). The court takes as true evidence favorable to the nonmovant and indulges every reasonable inference and resolves any doubts in the nonmovant's favor. *Id.* (citing *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009)). "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 664 (Tex. 2019).

<u>Issues One and Two—Governmental vs. Proprietary Function and Ownership of Line</u>

By its first issue, the City contends it was performing a governmental function when the line was cut and therefore, it is entitled to all privileges and immunities available under the TTCA. Taco Bell argues the City was engaging in a proprietary function because it supplied electricity to Taco Bell. In its related second issue, the City argues it did not own or operate the electrical line. We resolve the issues in favor of the City.

Section 101.0215 is not an independent waiver of the City's immunity. *City of Waco v. Page,* No. 10-24-00039-CV, 2024 Tex. App. LEXIS 7571, at *56, (Tex. App.—Waco, no pet.) (mem. op.) (citing *City of Mission v. Cantu*, 89 S.W.3d 795, 802 (Tex. App.—Corpus Christi 2002, no pet.); *City of Cibolo v. LeGros*, No. 08-23-00291-CV, 2024 Tex. App. LEXIS 4174 (Tex. App.—El Paso June 14, 2024, no pet.) (mem. op.)). Rather, section 101.0215(a) provides a list of governmental functions, while (b) provides a list of proprietary functions. TEX. CIV. PRAC. & REM. CODE § 101.0215.

A governmental unit like the City of Lubbock is protected by immunity from suits based on its performance of governmental functions but not from suits based on its performance of proprietary functions. *City of Waco*, 2024 Tex. App. LEXIS 7571, at *6 (citing *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2018); *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006)). Therefore, determining a municipality's immunity from suit is a two-step inquiry: (1) we first determine whether the function is governmental or proprietary, and if it is governmental, we (2) determine whether immunity is waived under the TTCA. *City of Waco*, 2024 Tex. App. LEXIS 7571, at *6 (citing *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 389 (Tex.

App.—Fort Worth 2008, no pet.) (internal citations omitted); *City of Mission v. Cantu*, 89 S.W.3d 795, 802 (Tex. App.—Corpus Christi 2002, no pet.)). *See also City of Dallas v. Jones*, 331 S.W.3d 781, 786 (Tex. App.—Dallas 2010, pet. denied) (discussing governmental and proprietary actions).

Governmental functions are "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM. CODE § 101.0215(a). A city's governmental functions include health and sanitation services, sanitary storm sewers, and water and sewer service. TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(2), (9), (32). A city is immune from suit for its torts committed in the performance of a governmental function unless the immunity has been clearly and expressly waived by the Legislature. *Davis*, 2018 Tex. App. LEXIS 1034, at *6. Conversely, proprietary functions are those a municipality "may, in its discretion, perform in the interest of the inhabitants of the municipality[.]" TEX. CIV. PRAC. & REM. CODE § 101.0215(b). These are functions that could be performed by private entities and are taken on for the benefit of the municipality's residents. *City of League City v. Jimmy Changas, Inc.*, 670 S.W.3d 494, 505 (Tex. 2023). A city is not immune from suit for its torts committed while performing proprietary functions. *Davis,* 2018 Tex. App. LEXIS 1034, at *6.

Taco Bell based its claim under the TTCA on the Public Works Department's negligent operation of motor-driven equipment (a backhoe) during the excavation to reach the damaged sewer line. It is clear that a city's governmental functions include health and sanitation services, sanitary storm sewers, and water and sewer service. TEX. CIV.

PRAC. & REM. CODE § 101.0215(a) (2), (9), (32). It is undisputed that here, the City was attempting to locate a ruptured and leaking sewer line at the time it struck the electrical line. That action was governmental in nature. *Id.* However, Taco Bell argues the City's action concerning the electrical line was proprietary because it provided electricity to Taco Bell through the line it struck. *Id.* at § 101.0215(b)(1) (pertaining to the operation and maintenance of a public utility). We do not agree.

In making its claims, Taco Bell focuses on the City's alleged negligence in its performance of its functions concerning service of electricity. For purposes of our analysis under the TTCA, we point out the City's actions in leading to the severance of the electrical line were not geared toward its functions regarding electricity; rather, the actions were geared toward locating and repairing the ruptured sewer line. The City did not cut the electrical line while servicing anything regarding electricity. It was responding to an emergency concerning sanitation and water and sewer service. The alleged failures by LP&L were not essential to the sewer line repair. Further, the means by which the line was severed, and the basis of Taco Bell's claim, was the use of a backhoe.[3] That was used in the City's function servicing sanitation and sewers, not electricity.

We also do not have here a splitting of various aspects of a municipality's operation. Instead, we have two different operations: those concerning water and sewer service (governmental) and those concerning electricity (proprietary). A city's proprietary action may be treated as governmental if it is essential to the city's governmental actions.

---

[3] Taco Bell based its claim on the negligent operation of motor-driven equipment, which could only have been through the City's action trying to repair the sewer leak, not with anything having to do with marking the lines.

7

*Wasson Interests, Ltd.*, 559 S.W.3d at 153. In *Wasson*, the Supreme Court concluded the City's conduct in leasing the lakefront property was not "essential" to the City's operation or maintenance of the lake and therefore, was not governmental. *Id.* What we have before us is akin to providing essential governmental actions. Leasing property is not something a City has to do, just as providing electricity is not; providing crucial services like water and sanitation service to citizens is. At the heart of the complaint here is damages caused by the City while it was conducting a governmental function, i.e., the repair of the sewer line. The City's actions, therefore, fall within the City's governmental functions under section 101.0215(a)(2) of the TTCA.

In addition to its claim under the TTCA, Taco Bell brought a common law negligence claim against the City based on LP&L's failure to register and mark the electrical line before excavation, arguing the City was performing a proprietary function through its publicly owned utility. We find the City did not have a duty to register and mark the line.

Section 251.101 of the Texas Utilities Code addresses underground facility damage prevention and safety. *See* TEX. UTIL. CODE § 251.101. In part, it established a statewide notification center, Texas811. One purpose of Texas811 is to notify an operator of an underground facility of any planned excavations in or around its facility. *Id.* at § 251.101(a)(2). The operator is required to mark the location of its underground facilities within 48 hours of receiving an excavation notice from Texas811. *Id*. at § 251.157(a). An operator is also required to provide Texas811 with maps or location identifiers for the electrical line. *Id*. at § 251.107(b). It is, therefore, relevant who the operator was to be able to determine who had a duty to mark the line and who breached that duty.

8

In making its argument that it was not the owner or operator of the line, the City claims the line that was cut was Taco Bell's responsibility, not the City's because it only owns, operates, and maintains electrical lines to the "point of delivery," the meter or meter box. The line at issue here was cut past the point of delivery. Therefore, according to the City, it was not the City's line, but rather Taco Bell's line, and thus, its responsibility.

Taco Bell points to several facts to support its position that the line was owned by the City. First, it was placed in a public utility easement along with several other lines. LP&L began supplying electricity through the line after an inspection in 2020. Taco Bell argues the City became an operator when LP&L energized the line and caused it to function because the line would have been useless otherwise. *See* TEX. UTIL. CODE § 251.002(11). Moreover, Taco Bell argues, the City severed the line where it was located in the utility easement. Several other lines also go through this easement. Taco Bell argues that because a public utility easement is real property, *CenterPoint Energy Hous. Elec., LLC v. Wilder*, No. 01-22-00853-CV, 2025 Tex. App. LEXIS 5852, at *42–43 (Tex. App.—Houston [1st Dist.] Aug. 7, 2025, pet. denied) (mem. op.), the City was the owner of the electrical line.

We disagree with Taco Bell's position. The record shows Taco Bell had the line installed in 2019 to gain access to electricity for its restaurant. The line was not installed for use by the public at large nor does it appear others were able to utilize it. The contractor for Taco Bell registered the line with Texas811 at the time of installation. The evidence in the record also shows that after the line was cut during the City's digging to locate and repair the ruptured sewer line, Taco Bell contacted its contractor and had it repair the line to restore electricity to its restaurant to resume business. The fact that the

City provided electricity to the line to the meter box does not mean it owns the line for purposes of liability. Under Taco Bell's logic, the City would potentially own and operate all electrical lines in the City. We find the evidence shows the line was private in nature and the responsibility of Taco Bell.

Having concluded both that the City owed no duty to mark the line and that the City's actions were governmental in nature, we turn to consideration of whether immunity has been waived under the TTCA. The TTCA waives governmental immunity in limited circumstances. *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). It is "strictly construed on the side of preserving immunity." *Guillen v. City of San Antonio*, 13 S.W.3d 428, 433 (Tex. App.—San Antonio 2000, pet. denied). As is relevant here, a governmental unit is liable if "the property damage . . . arises from the operation or use of a motor-driven vehicle or motor-driven equipment" and "the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A), (B). Courts have found a motor-driven backhoe qualifies as "motor-driven equipment" such that the limited exception to immunity applies. *City of Monahans v. Southwestern Bell Tel. Co.*, 656 S.W.3d 738, 748 (Tex. App.—El Paso 2022, no pet.).

In this case, Taco Bell alleged facts that supported its claim that the electrical line was severed by the backhoe the City used to dig to reach the sewer line it needed to repair. There was evidence supporting proximate cause between the use of the backhoe and the severing of the line. Therefore, the limited waiver to governmental liability applies.

10

<u>Issue Three—Emergency</u>

Via its third issue, the City argues it was responding to an emergency and consequently, was not liable for simple negligence under section 101.055(2) of the TTCA. We sustain the issue.

Taco Bell sued the City for ordinary negligence. The City contends that under section 101.055(2), the City is not liable for ordinary negligence when its actions involve an emergency situation. In that circumstance, the City is liable only if its actions are taken with conscious indifference or reckless disregard or if the City fails to comply with rules that are applicable to the specific emergency.

The relevant statutory law does not define "emergency," but the Texas Supreme Court has interpreted the term rather broadly. *See e.g., City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex. 2006) (concluding the court would not construe section 101.055(2) to exclude emergencies the Legislature might have intend to include). *See also Caldwell Cty. v. Genfan*, No. 07-21-00087-CV, 2021 Tex. App. LEXIS 7808, at *4 (Tex. App.—Amarillo Sept. 22, 2021, no pet.) (mem. op) (finding a flood constituted an "emergency" under 101.055(2)). Whether an emergency exists generally implicates a question of fact but may be determined as a matter of law when the evidence is clear and uncontroverted. *Id.* at *7.

When a governmental entity raises the defense of an emergency, it is the plaintiff's burden to overcome that assertion. *City of Houston v. Arellano*, 654 S.W.3d 483, 487 (Tex. 2022); *Gordon v. N. Tex. Tollway Auth.*, No. 02-24-00538-CV, 2025 Tex. App. LEXIS 6215, at *6 (Tex. App.—Fort Worth Aug. 14, 2025, no pet.) (mem. op.); *Tex. DOT*

11

*v. Jackson*, 528 S.W.3d 598, 602–03 (Tex. App.—El Paso 2017, pet. denied).  The City argues Taco Bell failed to do so here because it provided no additional facts or evidence to rebut the City's assertion of emergency.  Taco Bell argued only that it must not have been an emergency because the City did not begin excavating until the morning after the initial report was made.

In this case, the City argues, it is undisputed that it treated the ruptured sewer line as an emergency.  *See* TEX. HEALTH & SAFETY CODE § 341.011(5) (stating that "sewage, human excreta, wastewater, garbage, or other organic wastes deposited, stored, discharged, or exposed in such a way as to be a potential instrument or medium in disease transmission to a person or between persons" is a public health nuisance).

Next, we cannot agree that the City's waiting until the morning following the report to address the ruptured sewer line shows it was not responding to an emergency.  Rather, it establishes it was taking necessary steps to ensure the safe location and repair of the problem.  The City received the report, promptly notified the proper entities, and allowed for time for utility crews to mark known lines.  *See Genfan*, 2021 Tex. App. LEXIS 7808, at *3 (having time to react does not automatically render a situation less of an emergency). *See also Gordon v. N. Tex. Tollway Auth.*, No.02-24-00538-CV, 2025 Tex. App. LEXIS 6215, at *10–11 (Tex. App.—Fort Worth Aug. 14, 2025, no pet.) (mem. op.) (discussing failure to negate emergency exception).  Taco Bell has not provided evidence to rebut the application of the emergency provision.

We also cannot find that in responding to the emergency situation, the City acted with conscious indifference or reckless disregard for others.  *City of Amarillo v. Martin*,

12

971 S.W.2d 426, 428 (Tex. 1998).  *See also City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022).  It properly notified Texas811 and allowed time for utility crews to mark known lines.  As an additional precaution, when the City began digging, it utilized other methods for detecting unmarked lines or unknown objects.  This shows the City was not acting in a willful or wanton manner but rather, was taking measures to ensure its actions were conducted carefully.  *See Genfan,* 2021 Tex. App. LEXIS 7808 at *11–13 (finding the record negated, as a matter of law, any suggestion that the County knew of the relevant facts (the flooding) but did not care about the result (the safety of others)).  *See also Gordon*, 2025 Tex. App. LEXIS 6215, at *12–18 (discussing lack of evidence of recklessness).

## CONCLUSION

Viewing the record in the requisite light, we find the trial court erred in denying the City's motions.  We reverse the trial court's order and render judgment dismissing Taco Bell's claims for lack of jurisdiction.


Alex Yarbrough
Justice


13